ALEXANDER CAMPBELL, ADMINISTRATOR, *vs.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY ET ALS.

Third Judicial District, Bridgeport, October Term, 1917.

PRENTICE, C. J., RORABACK, WHEELER, BEACH and SHUMWAY, Js.

The plaintiff claimed that his intestate, an employee of an oil company, while painting one of its cars upon a track in its yard, was struck and killed either by being caught between two cars or by being knocked down and run over when an engine and several other cars backed into the car ahead and drove it against the car upon which he was at work. The oil company and the railroad company each contended that the accident happened otherwise, and that even on the plaintiff's version, the decedent should have protected

Campbell *v.* New York, N. H. & H. R. Co.

himself by placing a blue flag in the track in front of the car upon which he was at work, as required by an alleged rule and practice of the yard. *Held:—*

1. That assuming the flag system was in existence at the time of the accident, it must further appear that the intestate had been instructed regarding it before he could be charged with negligence.
2. That inasmuch as there appeared to be a conflict in the testimony as to whether it was the duty of the decedent or of the foreman of the repairmen to place the flag, that question was one for the jury.
3. That it was also for the jury to determine whether the decedent had been instructed as to the rule respecting the use of a flag.
4. That the evidence respecting the place and manner of the accident was not so overwhelmingly in favor of the contention of the defendants as to require the trial court to set aside a verdict for the plaintiff.
5. That there was no duty upon the railroad company to see that the decedent was not working upon or near the cars to be moved; and that the facts in evidence, upon any theory of the case, failed to support the conclusion that all or any of the railroad crew were negligent.

The trial court charged the jury that the railroad crew while operating the train within the yard of the oil company were the latter's servants, and directed a verdict for the railroad company. *Held* that the ground of this instruction was erroneous: that merely telling the railroad conductor where the incoming cars were to be placed in the yard, and which were the outgoing cars, was not such an exercise of direction or control upon the part of the oil company as to make the train crew its servants.

Argued October 31st—decided December 15th, 1917.

ACTION to recover damages for negligently causing the death of the plaintiff's intestate, brought to the Superior Court in Fairfield County and tried to the jury before *Williams, J.;* verdict and judgment for the plaintiff for $5,000 as against the defendant Standard Oil Company and, by direction of the court, in favor of the defendant Railroad Company, from which the Standard Oil Company and also the plaintiff appealed. *No error on either appeal.*

*Joseph P. Tuttle* and *Thomas J. Spellacy,* for the appellant (defendant Standard Oil Company).

*Howard W. Taylor* and *Nehemiah Candee*, with whom was *John T. Dwyer*, for the appellant (plaintiff).

*William L. Barnett*, for the appellee (defendant Railroad Company).

WHEELER, J. The case was tried to the jury, but it appears from the record that most of the facts were not in dispute. The Standard Oil Company, on August 17th, 1911, owned and used a yard for the storing of petroleum and its products. In the yard were five spur tracks, and one main track which passed through the gates of the yard to a connection with the defendant railroad outside the gates. These tracks were numbered from one to six. The railroad brought daily into the yard cars loaded with material for the Oil Company or empty cars owned by the Union Tank Company, which were loaded by the Oil Company with its products and transported out of the yard and to their destination by the railroad. An employee of the Oil Company gave to the conductor of the train upon reaching the gates instructions, oral or written, as to the location in the yard of the incoming cars, and as to which were the outgoing cars. The train would not enter the yard until an employee of the Oil Company opened the gates and threw the semaphore at a crossing of a trolley road outside the gates.

The Oil Company had no control over the operation of the train in or out of the yard, and no control over the train crew; these remained under the exclusive control of the railroad. The Oil Company exercised no other duties in connection with the train except to open the gates, to throw the semaphore, and to hand the conductor of the train his instructions as to the location of the incoming cars and as to the cars to be taken out of the yard.

Under its agreement with the Tank Company, the Oil Company' repaired the cars of the Tank Company when found necessary, and it had on the day in question three men so employed, McInnis, Morrow, and the deceased Leinster, and a part of their work was the painting of the cars in the yard requiring painting, and under as well as over all other parts of the cars. The cars were repaired on all of these tracks.

On the day in question, an engine and four cars with a crew consisting of an engineer, a firemen, two switchmen, and a conductor, ran to the yard and received at the gate instructions as to incoming and outgoing cars. The engine then pushed into the yard four cars to be left there, and the crew was proceeding in due course with their work when Leinster, one of the three men engaged in repair work, was either caught between two cars on track five, or knocked down by the impact of two cars, while he was either at work under one of the cars, or standing near one of the cars and outside the track.

The plaintiff claimed the injury occurred on track four, the defendants near track five. The jury found, by its answer to an interrogatory, that it occurred on track five, and on the evidence this fact must be taken as conclusively established. The plaintiff claimed to have proved that the car was pushed against the car under which Leinster was at work without notice to him of the approach of the train. The defendants claimed to have proved that Leinster had been instructed to place a blue flag in front of the car on which he was working, as a warning to the train not to approach, and that he had failed to do this. The plaintiff also claimed to have produced evidence that Leinster was engaged in the due course of his work painting underneath the car when he received his injury. The defendants claimed to have proved that Leinster had

no duty on track five, and was not then engaged upon the Oil Company's work, nor under instruction from it, under which all work done by him was begun and pursued. The Oil Company also contends that the verdict was against the evidence.

The case against the Oil Company must rest upon proof, by a fair preponderance of the evidence, that Leinster was at work in the course of his employment in painting a car on track five, and that, without notice to him of the approaching train, the Oil Company permitted the train to be pushed against the car Leinster was working on, or against the car next to the car he was working on, causing this car to strike the car he was working on, throwing him down, and the train immediately being pulled out the car passed over him causing him the injuries from which he died.

The plaintiff's witness, Martin, testified that Leinster was on track four, the proof showed that he was on or near track five. The defendants argue that this tends strongly to discredit Martin. But we think the jury might have reached another view, and found that Martin was mistaken in the track, but not mistaken in what he saw Leinster doing.

The two questions of fact decisive of this motion to set aside the verdict are: 1. Did the train cause Leinster to be knocked down and run over without his having been notified of its approach? 2. At the time of his injury was Leinster engaged in his master's work and by his express or implied command?

We briefly discuss in order these questions. A number of witnesses in behalf of the defendants testified to the existence of a rule and practice of the yard by which a blue flag was required to be placed upon the track in front of the car on this track which was being repaired, and that this flag was notice to the railroad crew to keep its train off this track. And several testi-

fied that it was the duty of the employees on the repairs to place these flags, and that at the time of the accident there was no flag on track number five. If these were the only facts in evidence, and Leinster had notice of this rule, it would follow that Leinster was negligent in not having protected himself by complying with the rules of his master. But Crofut, the assistant yardmaster at the time of the accident, testified that this flag system was inaugurated after the accident. If we assume that the jury ought to have found that the flag system was in existence at the time of the accident, this does not conclude the question of Leinster's negligence, as the defendants seem to assume. It must further appear that Leinster had been instructed to protect himself by placing one of the flags on the track on which he was at work. Mills, the local manager of the Oil Company, and McInnis, testified that it was Leinster's duty to have placed a flag on the track on which he was at work; and McInnis testified that he had instructed Leinster as to this duty. Morrow, on the contrary, whose deposition was taken by the plaintiff and introduced in evidence by the defendants, testified that it was the duty of McInnis, the foreman, to have placed these flags. Here was a conflict of testimony, and it was for the jury to decide whether Mills and McInnis, or Morrow, was correct. And it was also for the jury to find whether McInnis in fact gave Leinster such instruction. If the jury found that Morrow was correct, they must necessarily have found that there was no occasion for McInnis to give such instructions, and they were at liberty to find that he did not give them. If the jury found that Leinster did not receive these instructions, their finding that he did not know of the approach of the train and that he was not negligent, would have been permissible and logical.

There remains the question whether or not Leinster at this time was engaged in his master's work and at a place where he had the right to be. McInnis said that when he and Morrow went to the gate Leinster was at work painting at the rear of car two on track four, and that Leinster worked under his orders, and that he had given him no order to work on cars on track five, but only on those on track four. Martin, the only eye-witness of the accident, testified that at the time of the accident Leinster was painting under the car. Martin's testimony is assailed as unworthy of belief. That he was in the yard at the time of the accident is undoubted; that he then claimed to be an eye-witness is equally certain. The defendants claim that Martin's location of the track as number four, shows that he never saw the accident. McInnis' statement that they were working on track four is unsupported, and Morrow says he can't say on which track they were working. The principal significance of Martin's testimony is that he saw Leinster painting under the car when the accident occurred. Crofut, testifying for the plaintiff, says it was the custom to caulk the seams and nuts of the cars when they came in and before they went out by painting them. The cars on track five were to be moved out of the yard that day. It was for the jury to find whether Crofut or McInnis was correct. It cannot be held as matter of law that the jury could not have found that Leinster was engaged in painting under the car at the time of the accident; and if he was so painting, it was a fair inference for the jury whether he was engaged in work for his master and under his employment, or was working contrary to orders or on his own business. It evidently was his duty to keep on with his work. Why should he turn from working, standing by the side of car two on track four, where McInnis says his employ-

ment directed him to work, to go to track five and work underneath either car one or two? No reason has been suggested and none suggests itself to us. It was for the jury to weigh McInnis' testimony, and we cannot say that the jury's failure to follow it was manifestly going against the overwhelming weight of the evidence. The refusal of the trial court to set aside the verdict was not error.

The charge of the court, that the railroad crew while at work operating the train within the yard were the servants of the Oil Company, and that it had not been shown that they were the fellow-servants of Leinster, and that the negligence of the crew was the negligence of the Oil Company, is assigned as error by the plaintiff and by the defendant Oil Company.

The crew of the railroad would have become the servants of the Oil Company, although remaining in the general service of the railroad, provided the crew were engaged in a service for the Oil Company within the yard, and were there acting under its orders and subject to its control. Before the train entered the yard the Oil Company instructed the conductor of the train as to where incoming cars should be placed, and which were the outgoing cars. That comprised all the control over the operation of the train by the Oil Company. None of the train crew while in the yard were subject to the order or control of the Oil Company. The train crew shifted the cars, and made up the train at its own will and controlled its own time. The case of *McInerney* v. *Delaware & Hudson Canal Co.*, 151 N. Y. 411, 416, 45 N. E. 848, upon which the railroad relies, is distinguishable in that the engine crew in that case were engaged in the service of the owner of the premises, and were acting under his orders and subject to his control. "The test is whether, in the particular service which he is engaged to perform,

he continues liable to the direction and control of his master or becomes subject to that of the party to whom he is lent or hired." *Coughlin* v. *Cambridge,* 166 Mass. 268, 277, 44 N. E. 218.

The court directed a verdict for the railroad upon a 'wrong principle, but it does not follow that the result reached is incorrect. The facts in evidence, on any theory of the case, do not support the conclusion that all or any of the crew of the railroad were negligent. There was no duty upon the railroad to see that Leinster was not working upon or near the cars to be moved. When the conductor was given the list of locations of incoming cars and the list of outgoing cars, he had the right to assume that he could move these cars in the usual course. While the railroad was charged with knowledge that repairs were made on cars on any of the tracks in the yard by the Oil Company, they were entitled to believe when they received these lists that no repairs were then in progress on the cars on these tracks. And if the jury found that it was the rule and practice to put flags in front of cars on which repairs were being made, and that the railroad knew this, there was no flag on track five and no notice to the railroad that an employee of the Oil Company was at work on any of these cars. The railroad was under no duty to look under the cars it moved. Its operation was usual and not negligent. *Earley* v. *Hall,* 89 Conn. 606, 611, 95 Atl. 2.

In view of this conclusion, we do not consider the instruction complained of as to whether the train crew, if servants of the Oil Company, were fellow-servants of Leinster.

The verdict was properly directed in favor of the Railroad.

There is no error on either appeal.

In this opinion the other judges concurred.