CANDIDA MASSOLINI vs. PATRICK DRISCOLL ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued January 7th—decided March 22d, 1932.

*John C. Blackall,* for the appellants (defendants Driscoll and Bankers Indemnity Insurance Company).

*S. Polk Waskowitz* and *Edward S. Pomeranz,* with whom, on the brief, were *Solomon Elsner, Lucius F. Robinson, Jr.,* and *Philip H. La Fleur,* for the appellant (defendant City of Hartford).

Frank Covello, for the appellee (plaintiff).

AVERY, J. From the finding of the commissioner, the following facts appear: January 21st, 1931, the respondent, Driscoll, had a team of horses which he was renting with a driver to the city of Hartford for $9 per day. The wagon to which the horses were attached belonged to the city, but the harness and other equipment belonged to Driscoll, who was in the teaming business and that of letting out and renting teams and horses with drivers. The city had no interest in who the driver of the team might be so long as he was competent; and did not attempt to exercise any particular supervision, control or direction over him, and had no right to discharge him. The driver's duty was solely to manage, care for and drive his horses along an established route in the city. The driver and horses, with the city wagon, reported each morning at a certain point in the city about seven a.m., and took up the collection of ashes and rubbish, two men being supplied by the city who threw the collected refuse into the wagon. The driver of the team drove the horses, and when the wagon was full, took it to some nearby dump, the selection of which was discretionary with him. The decedent was a driver employed by Driscoll at a wage of $26 per week, was paid by Driscoll and subject to the latter's orders. He had been so employed and worked on this particular city job for Driscoll for about twenty-six months. He was not on the city payroll; was not entitled to the benefits of the pension system of the street department, and was in no way considered by the city as its employee. If he turned out to be unsatisfactory, the city could not discharge him but would have to report the matter to Driscoll; and if the latter did not furnish a satisfactory driver for his team, it is probable that he would lose his contract with the city for the rental of the horses. The city had no control or right to

control the management, manner or mode of the driving or hauling of the team or the way of doing the work.

On the morning of January 21st, 1931, the decedent reported to Driscoll's barn, where the horses and wagon were kept, at the usual time, about six a.m., harnessed the horses and drove them, with the wagon, to Ann Street in the city, where he knew from long experience he was supposed to go that day and be in readiness to start the collection of rubbish and ashes with the aid of the two men furnished by the city. Driscoll furnished all feed and equipment for the horses; their hoofs were equipped with shoes designed for taking calks to prevent slipping, and the decedent had with him calks furnished by Driscoll for application to the horses' shoes should slippery conditions prevail. Shortly after seven a.m., the decedent, with the horses and wagon, was waiting on Ann Street intending, under Driscoll's contract, to go along with the city men, collecting the refuse. He had not collected any that day because the team ahead of him was not full, and he would not start the actual collection until that team had been filled and driven away to the dump. Decedent decided that calks should be applied to the shoes of the horses. He got down under the horses and was trying to place the calks in their proper places, when one of the horses kicked him, and he sustained injuries which caused his death January 26th, 1931. The care of the horses is not part of the city's business, and in doing the work on the shoes decedent was doing something solely in the interest of Driscoll and of no benefit to the city. The work which the decedent was doing was for the contractor, Driscoll; the principal employer was the city of Hartford.

It is the claim of the defendant Driscoll that the deceased, at the time of his injury, was a loaned em-

ployee; and that the award should have been against the city and not against Driscoll, the immediate employer. The finding does not, however, sustain this contention. So far as appears, the city had control of Massolini's operations only to the extent of determining to what points he should drive his team in order to receive a load. It had control of the operation only as to the result to be obtained, but the control of the method to be adopted in reaching the result remained with Driscoll. It was for the latter to determine what man should do the driving and just how that man should do the driving, and how he should care for the horses. Under such circumstances, Massolini remained the employee of Driscoll, and was used by him in fulfilling the latter's contract with the city. Massolini was not an employee loaned to the city to be under the city's control in the details of the work he was doing. *Parsons v. Daly & Sons,* 114 Conn. 143, 150, 158 Atl. 216; *Campbell* v. *New York, N. H. & H. R. Co.,* 92 Conn. 322, 329, 102 Atl. 597; *Schweitzer* v. *Thompson & Norris Co.,* 229 N. Y. 97, 99, 102 N. E. 904; *Clancy's Case,* 228 Mass. 316, 318, 117 N. E. 347; *Scribner's Case,* 231 Mass. 132, 134, 120 N. E. 350; *Eckert's Case,* 233 Mass. 577, 578, 124 N. E. 421; *Hogan's Case,* 236 Mass. 241, 243, 127 N. E. 892; *Gallagher's Case,* 240 Mass. 455, 457, 134 N. E. 344; *Brooks* v. *Buckley & Banks,* 291 Pa. St. 1, 139 Atl. 379, 381; *Linstead* v. *Chesapeake & O. Ry. Co.,* 276 U. s. 28, 33, 48 Sup. Ct. 241.

The city, in its appeal, attacks the conclusion of the court that the city was a principal employer under General Statutes, § 5230, which provides: "When any principal employer shall procure any work to be done wholly or in part for him by a contractor, or through him by a subcontractor, and the work so procured to be done shall be a part or process in the trade or busi-

ness of such principal employer, and shall be performed in, on or about premises under his control, then such principal employer shall be liable to pay all compensation under this chapter to the same extent as if the work were done without the intervention of such contractor or subcontractor." We have held that, to render a principal employer liable under this statute, (1) the relation of principal employer and contractor must exist in work wholly or in part for the former; (2) the work must be in, on or about premises controlled by the principal employer; and (3) the work be a part or process in the trade or business of the principal employer. *Crane* v. *Peach Brothers*, 106 Conn. 110, 113, 137 Atl. 15; *Fox* v. *Fafnir Bearing Co.*, 107 Conn. 189, 191, 139 Atl. 778; *Bogoratt* v. *Pratt & Whitney Aircraft Co.*, 114 Conn. 126, 136, 157 Atl. 860, 864. The first two of these requirements are fully met by the facts found. As to the third condition, the commissioner ruled that while the work was being done on a street which was premises under the city's control, at least so far as the matters involved in this controversy are concerned, and was being done for the city as a principal employer by the contractor; nevertheless, the care of horses is not part of the city's business, and in doing the work on the shoes, decedent was doing something solely in the interest of Driscoll and was of no benefit to the city. The trial court held that, although Massolini was injured while affixing calks to the horses' shoes, this was in furtherance of the operation of carting the ashes to a dump, was incidental thereto, was being done during the time for which the city was paying, and was part and process of the city's trade or business. The question on this phase of the appeal is which of these conflicting conclusions is correct.

The city of Hartford was engaged in the removal of

ashes and refuse in the exercise of its police powers. 5 Special Acts, 321; *Haley* v. *Boston,* 191 Mass. 291, 293, 77 N. E. 888; *Mayor and City Council of Baltimore* v. *Hampton Court Co.,* 126 Md. 341, 94 Atl. 1018, 1020; 3 McQuillin, Municipal Corporations (2d Ed.) § 971. By General Statutes, § 5230, above cited, to render the city liable to pay compensation as a principal employer for the injury to Massolini, the work upon which he was engaged when injured must be "part or process in the trade or business of the principal employer." The language of the statute is disjunctive—"trade or business." Both terms are, therefore, to be given their natural meaning, and are not used synonymously. "Trade" commonly connotes the buying, selling or exchanging of commodities. "Business," however, is a much broader term. In *Easterbrook* v. *Hebrew Ladies Orphan Society,* 85 Conn. 289, 294, 82 Atl. 561, JUSTICE PRENTICE stated: "The word 'business' is one which is used with widely variant meanings. It is used broadly to signify 'that which . . . engages or [occupies] time, attention, or labor, as a principal serious concern or interest.' Webster's New International Dictionary. In this sense, it embraces everything about which one can be employed. *People ex rel. Parker Mills* v. *Commissioner of Taxes,* 23 N. Y. 242, 244"; and, in the course of a dissenting opinion in the same case, JUSTICE WHEELER defined the term in this language (p. 305): "In its more general or common use, it denotes not only all gainful occupations, but all occupations or duties in which men engage. *Rolls* v. *Miller,* L. R. 27 Ch. Div. 71, 88; *Bennett* v. *Hebbard,* 74 N. H. 411, 68 Atl. 537; *Semple* v. *Schwarz,* 130 Mo. App. 65, 109 S. W. 633." When applied to a public corporation, the term signifies the conduct of the usual affairs of the corporation, and such as commonly engage the attention of its officers.

*Mount* v. *State ex rel. Richey,* 90 Ind. 29, 31; *Jackson County Board of Comrs.* v. *State ex rel. Brown,* 147 Ind. 476, 487, 46 N. E. 908.

The Compensation Act is to be construed with sufficient liberality to carry into effect the beneficent purpose contemplated in that legislation, and not to defeat that purpose by narrow and technical definition. *Powers* v. *Hotel Bond Co.,* 89 Conn. 143, 146, 93 Atl. 245. We hold, therefore, that the disposal of ashes and rubbish is a "business" in which the city of Hartford was engaged at the time of this accident within the meaning of General Statutes, § 5230. The deceased, having been injured on the premises of the city, while employed by a contractor hired by it, and while engaged in doing an act incidental to and in furtherance of the operations involved in the business of the city, a valid claim for compensation has been established against the city.

There is no error on either appeal.

In this opinion the other judges concurred.