[No. 24363. Department Two. July 25, 1933.]

WILLIAM MALLAND, *Respondent*, v. CHARLES SIMS *et al.*, *Appellants.*[1]

*Thomas Balmer, Edwin C. Matthias,* and *Charles S. Albert (Clayton M. Williams* and *Jesse H. Davis,* of counsel), for appellants.

*Newton & Newton* and *William A. Johnson,* for respondent.

TOLMAN, J.—This is an action for personal injuries tried to a jury. A verdict was rendered in favor of the plaintiff in the sum of $13,700. On motion for a new trial, the verdict was held to be excessive and the re-

[1]Reported in 24 P. (2d) 70.

sult of passion and prejudice. The plaintiff was given the option of consenting to a reduction in the amount of the verdict to $7,500, and, he so consenting, a judgment followed upon the verdict as reduced, from which the defendants have appealed.

Appellants present here a number of interesting and important questions, but the conclusions we have reached on one of the questions makes it unnecessary to consider the others. We shall therefore limit our statement of the facts and our discussion to the one decisive question.

It appears that, at the time of receiving the injuries, the respondent was the foreman in charge of loading shingles on board cars stationed on sidetracks or spurs adjacent to a shingle mill in the city of Everett. For some days, perhaps a week, preceding the accident, appellant Sims, with the appellant Haley as engineer and a crew of men under him, all employed by the appellant Great Northern Railway Company, had been engaged in repairing the spur track by driving new piles as needed to support a trestle.

Each crew was well informed as to the presence of the other. Only an hour or a little more before the happening of the accident, respondent had personally requested Sims to move the pile driver a few feet so that he, the respondent, might move up another car to be loaded. At the time of the accident two cars standing on parallel tracks were being loaded at the same time and by the same conveyor. This mechanical power driven conveyor passed through the first car, in which respondent was working alone. He there took from the conveyor such bundles of shingles as he could handle, and those remaining were passed on by the conveyor to the car beyond, where two men cared for what the conveyor brought to them.

All admit that the situation was as just described

when, shortly before noon, the pile driver moved back along the spur track toward the place it had occupied earlier in the day. Apparently, two cars had been moved up, instead of one, as Sims and Haley had expected. At any rate, they misjudged the space and distance to the extent that the pile driver struck the first of the string of box cars connected with the one occupied by respondent with sufficient force to move that car and displace the shingle conveyor. No harm was done by this contact, and the trial court instructed the jury that it was not a proximate cause of the accident which later followed. No one now complains of that ruling.

At this point, and following the bumping which stopped the conveyor, the witness Golding, who was a member of respondent's loading crew, employed by him and working under his supervision and direction, enters the picture. Golding testified that he did not hear the bump of the cars, but did see that the conveyor was out of commission, and went immediately to the car occupied by respondent and there assisted in putting the conveyor again in position to operate. He continued under examination in chief, as follows:

"Q. What did you do then? A. I hopped out of the car to go to see if Mr. Sims was going to respot the car for us. Q. Who was Mr. Sims? A. He was the bridge foreman for the Great Northern. Q. Was he in charge of that crew? A. Apparently he was. Q. Do you know Mr. Sims? A. Yes, I do know Mr. Sims. Q. And did you speak to Mr. Sims about it? A. I spoke to Mr. Sims. Q. Where was he at the time? A. Standing beside of the pile driving outfit on the platform. Q. On the platform? A. Yes, beside of the tracks."

On cross-examination, he testified:

"Q. And at that time you asked him to respot the car? A. I asked him if he would respot the car, that

is correct. I think he said he would try to. Q. And after that was done, then you walked on back down towards the warehouse, is that correct? A. Yes, sir. Q. And when you walked on down there the pile driver had been moved back towards where the cars were? A. I guess it had,—something bumped the cars.''

Respondent's version of the accident, as testified to by him, is as follows:

''A. Well, I was working in the car there and taking shingles off of the gravity rollers, and all of a sudden there was a bump in the car. The car moved up, and the gravity rollers was displaced,—they fell down in the car. And some of the boys came along and helped me straighten them up and we set them up again and after we had them aligned up with the conveyor, the boys went back to their places and I went back in the end of the car to straighten up some of the shingles that had been displaced by the impact of the jar of the car. Q. That is, the north end? A. Yes, sir. And after I straightened them up I walked towards the middle of the car where the gravity rollers runs through and there wasn't any shingles coming there and I was going to go out into the loading shed to get the things started again, and I went to step over this gravity roller that runs through the car,—it's about a foot and a half or two feet possibly from the floor of the car. As I put my foot over the gravity there was a sharp bump in the car that moved south and then there was a violent jerk, and then I fell out of the car.''

We find nothing in the record tending to show that Golding did not have authority to make the request to have the cars respotted or that it was not his duty so to do without special direction, and there is no suggestion that there was anything in the situation as then disclosed to Sims and Haley which would lead them to question the request of Golding or which would put them upon notice that any one would be subjected to any danger by their prompt compliance with that request. The situation was not changed by the evi-

dence for the defense, except to make it more clear and more strongly an undisputed question of fact that Golding made the request for the respotting of the cars, and that Sims and Haley complied promptly and readily with that request, with nothing whatever to warn them that their act in so doing would place anyone or anything in danger.

It seems to be conceded, at least not denied, that the pile driver was not a locomotive designed for moving freight cars; that it had but little power which could be so applied, and as a consequence, it could move a string of two or three box cars only with the greatest difficulty and not with the smoothness and efficiency of a locomotive. Probably for this reason, there was no charge of negligence as to the manner of attempting to respot the cars, but only that the attempt was made at all or without warning. No instruction was given which permitted the jury to find that the attempt to respot the cars was in any manner negligently carried out, save only that no prior warning was given to the respondent.

We think the trial court should have sustained the challenge to the evidence which was interposed at the close of plaintiff's case, or should have directed a verdict for the defendants at the close of the whole case.

Negligence has been often defined by this and other courts:

"Negligence is the want of care required by the circumstances." *Olmstead v. Olympia,* 59 Wash. 147, 109 Pac. 602.

"Negligence is an omission of duty imposed by statute or implied by law." *Mayhew v. Yakima Power Co.,* 72 Wash. 431, 130 Pac. 485.

"Negligence consists in doing some act which should not have been done, or in omitting some act which should have been done." *Herrick v. Washington*

*Water Power Co.,* 75 Wash. 149, 134 Pac. 934, 48 L. R. A. (N. S.) 640.

The facts upon this issue being entirely free from conflict or dispute, and there being no room for inferences except such as would be still more unfavorable to the respondent's case, it became the duty of the trial court to say, as a matter of law, whether or not the appellants or any of them were guilty of negligence.

Surely, acting as reasonable men, those in charge of the pile driver had a right, under the circumstances shown, to believe that Golding, known to them to be a member of the loading crew, spoke for that crew in asking that the cars be respotted. They could not then enter upon an inquiry or an investigation as to his authority, holding the crew in idleness while they investigated. Such a course would have been wholly unreasonable. The situation was a simple one, such as must often occur, which called for prompt action upon the apparent authority of Golding to speak for his crew, and there being nothing known to the operators of the pile driver or within their observation which suggested the possibility of danger, it was not negligence to comply with Golding's request.

We are well supported in these views by the courts of other states. *Memphis, D. & G. R. Co. v. Yandall,* 123 Ark. 515, 185 S. W. 1096; *McInerney v. President, etc., of Delaware & H. Canal Co.,* 151 N. Y. 411, 45 N. E. 848.

Many courts go further. The supreme court of Connecticut in *Campbell v. New York, N. H. & H. R. Co.,* 92 Conn. 322, 102 Atl. 597, lays down the broad rule that a switching crew has a right to move cars in due course in the absence of notice that some person is working on or under the cars. Or, in other words, that the switching crew was under no duty to make anything more than the most cursory examination or to

give warning to any who might be within or under the cars. To like effect is *Prosser v. West Jersey & S. R. Co.,* 75 N. J. L. 614, 68 Atl. 58.

There are many cases to the effect that, in the absence of knowledge of any one working in and about the cars, the railroad operatives are not to be held negligent for proceeding with their duties in the regular way. Those cases are of importance here, not because of absence of knowledge of the presence of the loading crew, but as supporting us in principle, because the knowledge which was brought home to the operators of the pile driver and upon which they acted was to the effect that the loading crew desired the cars respotted and presumably were prepared for that operation. And, in addition to that, respondent was himself warned by the first contact of the immediate proximity of the pile driver, though that may suggest the question of contributory negligence, which we are not now considering. So that, in its facts, this case is much stronger than any of the following: *Lovell v. Kansas City Southern Ry. Co.,* 121 Mo. App. 466, 97 S. W. 193; *Cunningham v. Philadelphia & R. R. Co.,* 249 Pa. 134, 94 Atl. 467; *Cleveland C. C. & St. L. Ry. Co. v. Stephenson,* 139 Ind. 641, 37 N. E. 720.

We are satisfied that there was here no evidence of negligence sufficient to carry the case to the jury.

The judgment is reversed, with directions to dismiss the action.

BEALS, C. J., MAIN, and STEINERT, JJ., concur.

BLAKE, J. (dissenting)—I dissent. I think the failure to give a warning signal made a case of negligence for the jury.

I do not think the cases cited support the position of the majority. In *Memphis, D. & G. R. Co. v. Yandall,* 123 Ark. 515, 185 S. W. 1096, a warning signal

was given under such circumstances that the injured workman was deemed to have heard it. In *McInerney v. President, etc., of Delaware & H. Canal Co.*, 151 N. Y. 411, 45 N. E. 848, the railroad company was exonerated from liability on the ground that the injured workman was a fellow servant of the train crew. In *Campbell v. New York, N. H. & H. R. Co.*, 92 Conn. 322, 102 Atl. 597, the order to move the car was given by the employer of the injured workman. In *Prosser v. West Jersey & S. R. Co.*, 75 N. J. L. 614, 68 Atl. 58, the workman was held to be a mere licensee, to whom the defendant did not owe the duty of reasonable care unless it knew of his presence. In *Lovell v. Kansas City Southern Ry. Co.*, 121 Mo. App. 466, 97 S. W. 193, the accident occurred at the lunch hour, and there was no sign of activity about the car. In *Cunningham v. Philadelphia & R. Ry. Co.*, 249 Pa. 134, 94 Atl. 467, the injured workman had gone under the car to eat his lunch. The court said:

"There was, therefore, no legal duty resting upon the crew to give warning of the approach of the engine and cars, so far as the plaintiff was concerned, for he had done a most unusual and extraordinary thing, of which the defendant had no conceivable notice. To him at the time he was injured the defendant owed no duty, and the jury ought not to have been permitted to find that, as to him, it had been negligent, even if its employees had not given notice of the approach of their train."

*Cleveland C. C. & St. L. Ry. Co. v. Stephenson*, 139 Ind. 641, 37 N. E. 720, is another case of injury to a licensee.

Under the clear weight of authority, the respondent here was an invitee to whom the appellant owed reasonable care. 52 C. J. 538, 620, 622; Note 44 A. L. R. 1083. Our own cases go so far as to hold that a railroad company must exercise reasonable care toward a

licensee. *Roth v. Union Depot Co.*, 13 Wash. 525, 43 Pac. 641, 44 Pac. 253, 31 L. R. A. 855; *Hiatt v. Northern Pacific Ry. Co.*, 138 Wash. 558, 244 Pac. 994.

There is no evidence that Golding had any authority to order the car moved. The presumption assumed in the majority opinion that he had, is equivalent to the finding of a fact—the determination of which, in any event, was within the province of the jury.

ON REHEARING.

[*En Banc.* December 4, 1933.]

PER CURIAM.—Upon a rehearing *En Banc*, a majority of the court adheres to the Departmental opinion heretofore filed herein. The judgment is reversed.