## SEARS, ROEBUCK & CO. v. WALLACE.
### No. 5819.

United States Court of Appeals
Fourth Circuit.
Jan. 28, 1949.

---

[2] 28 U.S.C.A., 1946 Ed., § 878, Id., 1948 Ed., § 1912; Slaker v. O'Connor, 278 U.S. 188, 49 S.Ct. 158, 73 L.Ed. 258;

In re Midland United Co., 3 Cir., 141 F.2d 692.

L. S. Parsons, of Norfolk, Va. (Venable, Parsons, Kyle & Parsons, of Norfolk, Va., on the brief), for appellant.

John S. Rixey, of Norfolk, Va. (Rixey & Rixey, of Norfolk, Va., on the brief), for appellee.

Before SOPER and DOBIE, Circuit Judges, and WYCHE, District Judge.

SOPER, Circuit Judge.

This suit was brought to recover damages for injuries suffered by the plaintiff when he attempted to close the doors of an elevator in the defendant's warehouse in Norfolk. The evidence on behalf of the plaintiff indicated that he was on the premises as an employee of a subcontractor who had undertaken to make certain alterations to the building; that by reason of the defective condition of the elevator the doors remained open after it had left the floor on which the plaintiff was standing; and that his hand was caught by the doors and permanently injured when he attempted to close them in order to protect his fellow workmen. The jury found for the plaintiff in the sum of $5,000.

The grounds on which the defendant relied in the District Court and in this court on this appeal are twofold: (1) that the defendant was not guilty of actionable negligence in failing to keep the elevator in safe condition, and (2) that under the Workmen's Compensation Act of Virginia, Code 1942, § 1887(1) et seq., the defendant occupied the status of employer of the plaintiff, and as such was liable to make the compensation payments specified in the act and therefore the plaintiff was barred from maintaining this action.

The first defense raises the usual questions that are met in suits of personal injury, and all of them must be answered

adversely to the defendant when the evidence is considered, as it must be, in the light most favorable to the plaintiff. Sears, Roebuck and Company was the lessee and occupant of a building in Norfolk which it used for storage purposes. It entered into an agreement with a general contractor for alterations to the building which included closing all the window openings with brickwork. The brickwork was let by the general contractor to a subcontractor who employed the plaintiff as foreman of the bricklayers and other workmen who did the work. There were two elevators in the building both of which were used with the defendant's consent by the employees of the general contractor and subcontractor in the prosecution of the work. The accident occurred on the fourth floor where the elevator doors opened upon a corridor eight feet wide used as a passage for the workmen of the contractors and for their wheelbarrows laden with material. Each elevator door consisted of an upper and a lower section of sheet iron construction which, when open, left an opening into the shaft seven feet wide and eight feet high measured from the floor. When the elevator stopped flush with the floor the door remained closed until the operator separated the two sections manually by pressing down on one and up on the other until they were fully open when they were automatically engaged and held in place by a pin. The sections remained open so long as the elevator was stationary; but when it started up or down the sections automatically came together at a center horizontal line.

On the day of the accident the plaintiff was foreman of a gang of five or six bricklayers and seven laborers on the fourth floor. Additional employees of the general contractor were also working on this floor. The plaintiff was standing in the corridor in front of the elevator in conversation with the superintendent of the general contractor when he noticed that the elevator had gone down and saw that the doors had not closed. In order to close the dangerous opening into the shaft, he caught hold of the lower section and tried to pull it up whereupon the upper section came down suddenly and quickly, and crushed his hand before he could withdraw it.

Difficulty with the elevator doors had been noticed by the contractor's workmen before the accident. Sometimes when it was desired to keep a door open to permit the passage of materials and supplies, it was necessary to weight down the lower section of the door with bricks to keep it from closing; and sometimes the doors would not shut unless the sections were started by hand; indeed the action of the doors was found to be unpredictable. This condition affected both elevators.

This testimony was denied by employees of the defendant who had operated the elevators daily for years, and in addition the defendant produced evidence that the elevators were regularly inspected and were in good condition on the day of the accident. This issue of fact, however, was found against the defendant by the jury which visited the premises in the presence of court and counsel, and rode on the elevators and witnessed a demonstration of the operation of the door by defendant's employees. Obviously there was substantial testimony from which the jury might have inferred that the doors were defective and that knowledge of this condition had been brought home to the defendant.

The defense of contributory negligence on the part of the plaintiff was also made, and it was contended that it was foolhardy and dangerous for one who was not familiar with the operation of the elevators to undertake to close the doors in the manner described instead of reporting the situation to the defendant. Moreover, it is said that the plaintiff was only a volunteer or licensee on the premises, who had no obligation with respect to the operation of the elevators, and hence under the Virginia law, as set out in Goshen Furnace Corporation v. Tolley's Adm'r, 134 Va. 404, 405, 114 S.E. 728, he assumed the risk of the place as he found it and the defendant was under no duty to keep the premises in safe condition for his use and was not liable to him for the mere negligence of its servants but only for injuries wantonly or recklessly inflicted.

The evidence does not support this view of the plaintiff's status when he was hurt. It is not disputed that he was on the premises as a foreman of a gang of men

employed by a subcontractor of one who had been engaged by the defendant to make substantial alterations to the building. The plaintiff was therefore not a mere licensee but was on the premises as an invitee to whom the defendant owed the positive duty to use due care to keep safe the appliances under its control with which the plaintiff would normally come in contact in the performance of the work. Nor can it be said that the plaintiff was a mere volunteer in his actions, for he had a duty to protect the men in his charge from obvious danger. Doubtless he might have posted a guard at the opening and notified the defendant of the condition, but his more immediate response to the emergency, even though he was not qualified as an elevator operator, was not so clearly negligent as to justify a mandatory instruction on the question of contributory negligence. The judge properly left this issue to the determination of the jury.

The more difficult question relates to the bearing upon the case of the Virginia Workmen's Compensation Act, § 1887(1) et seq. of the Virginia Code of 1942, and particularly §§ 20(a) and 12 thereof, which are set out in full in the margin.[1] The defendant filed a special plea and motion to

---

[1] Sec. 20. "(a) Where any person (in this section referred to as 'owner'), undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section referred to as 'sub-contractor') for the execution or performance by or under such sub-contractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this act which he would have been liable to pay if the workman had been immediately employed by him.

"Where any person (in this section referred to as 'contractor') contracts to perform or execute any work for another person which work or undertaking is not a part of the trade, business or occupation of such other person and contracts with any other person (in this section referred to as 'sub-contractor') for the execution or performance by or under the sub-contractor of the whole or any part of the work undertaken by such contractor, then the contractor shall be liable to pay to any workman employed in the work any compensation under this act which he would have been liable to pay if that workman had been immediately employed by him.

"Where the sub-contractor, as the term is hereinbefore used, in turn contracts with still another person (in this section also referred to as 'sub-contractor') for the performance or execution by or under such last sub-contractor of the whole or any part of the work undertaken by the first sub-contractor, then the liability of the owner or contractor, as those terms are hereinbefore used, shall be the same as the liability imposed by the preceding paragraphs of this sub-section.

"Where compensation is claimed from or proceedings are taken against the owner or contractor as those terms are hereinbefore used, then, in the application of this act reference to the owner or contractor shall be substituted for reference to the sub-contractor, except that the amount of compensation shall be calculated with reference to the earnings of the workman under the sub-contractor by whom he is immediately employed."

Sec. 12. "The rights and remedies herein granted to an employee where he and his employer have accepted the provisions of this act respectively to pay and accept compensation on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin, at common law or otherwise on account of such injury, loss of service or death.

"The making of a lawful claim against an employer for compensation under this act for the injury or death of his employee shall operate as an assignment to the employer of any right to recover damages which the injured employee or his personal representative or other person may have against any other party for such injury or death, and such employer shall be subrogated to any such right and may enforce, in his own name or in the name of the injured employee or his personal representative, the legal liability of such other party. The amount of compensation paid by the employer or the amount of compensation to which the injured employee or his dependents are entitled shall not be admissible as evidence in any action brought to recover damages, but any amount collected by the employer under the provisions of this section in excess of the amount paid by the employer or for which he is liable shall be held by the employer for the benefit of the injured employee or other person entitled thereto, less such amounts as are

dismiss on the ground that the plaintiff was entitled to compensation for his injury under the statute, to be paid by the defendant, if not by the contractor or subcontractor, because the work on which he was engaged was in the language of § 20(a) part of the trade, business or occupation of the defendant; and hence the defendant was not subject to suit for negligence since the first paragraph of § 12 provides that the right of an injured employee to compensation excludes all other rights and remedies at common law or otherwise. The plaintiff has in fact made claim and has been paid compensation by his immediate employer, and this circumstance, under the second paragraph of § 12, operated as an assignment to his employer of any right he may have had to recover damages for the injury against any other party which may be enforced either in the name of the employer or employee; and the pending suit has been brought to enforce that right. The crucial question is whether the work being done at the time of the injury under the contract between the contractor and the defendant was part of the latter's trade, business or occupation for if so, the defendant, as owner, was required by § 20(a) to provide compensation not only for his own employees but also for the workmen of any general contractor or subcontractor, and was re-

lieved by § 12 from liability for the injury in any other suit.

The District Judge reserved the question until after the verdict of the jury on the issue of negligence and then, upon the defendant's motion for judgment non obstante veredicto, considered the question, without objection by the parties, in the light of the undisputed evidence given during the jury trial as to the nature of the work done and the relation of the parties engaged in its performance. The motion to dismiss was denied as the judge was of the opinion that the plaintiff's suit for negligence was not barred, because the defendant was not liable to pay compensation to the plaintiff under the statute as it has been interpreted by the Supreme Court of Appeals of Virginia in Bamber v. City of Norfolk, 138 Va. 26, 121 S.E. 564, and Sykes v. Stone & Webster Eng. Corporation, 186 Va. 116, 41 S.E.2d 469.

In Bamber v. City of Norfolk, supra, it was shown that the city in its proprietary capacity was engaged in maintaining a water system for the convenience of the citizens, and was obliged as a necessary incident of the business to repair old pipe lines and to build standpipes. It entered into a written contract with an independent contractor for the erection of a standpipe in the course of which a workman was

---

paid by the employer for reasonable expenses and attorney's fees. Provided, that no compromise settlement shall be made by the employer or insurance carrier in the exercise of such right of subrogation without the approval of the Industrial Commission and the injured employee or the personal representative or dependents of the deceased employee being first had and obtained.

"Where any employer is insured against liability for compensation with any insurance carrier, and such insurance carrier shall have paid any compensation for which the employer is liable or shall have assumed the liability of the employer therefor, it shall be subrogated to all the rights and duties of the employer, and may enforce any such rights in its own name or in the name of the injured employee or his or her personal representative; provided, however, nothing herein shall be construed as conferring upon the insurance carriers any other or further rights than those existing in the employer at the time of the injury to his

employee, anything in the policy of insurance to the contrary notwithstanding.

"In any such action by such employee, his personal representative or other person against any person other than the employer, the court shall, on petition or motion of the employer at any time prior to verdict, ascertain the amount of expenses for medical, surgical and hospital attention and supplies, and funeral expenses, incurred by the employer under the provisions of this act, and in event of judgment against such person other than the employer, the court shall in its order require that the judgment debtor pay such expenses of the employer so ascertained by the court out of the amount of the judgment, so far as sufficient, and the balance, if any, to the judgment creditor.

"Nothing in this act contained shall be construed to make, for the purposes of this act, the employees of an independent contractor the employees of the person or corporation employing or contracting with such independent contractor."

killed. It was held in a proceeding against the city under the Workmen's Compensation Act that the city was not liable as "principal contractor" under § 20(a) of the statute as it then stood. At that time § 20(a) was substantially similar to the first paragraph of the section as amended except that the words "principal contractor" occurred where the word "owner" now appears. The court held that an owner, as distinguished from a principal contractor, who undertook to have work executed for him by another, not as an employee, but as an independent contractor, was not required to provide compensation for the employees of the contractor or subcontractor; and that the words of the statute "undertakes to execute" should not be given the same meaning as if they read "undertakes to have executed"; and that to constitute a person a principal contractor, he must be one who undertakes to execute a work which is part of his trade, business or occupation. The court said that the history and purposes of the act indicated that the legislature did not have in mind as beneficiaries any other persons than such as are commonly understood as falling within the contractural relationship of master and servant, except when at least four persons are engaged in the work, that is, an owner, an independent contractor, a subcontractor and a workman employed in the work, and that in such case the section did depart from a classification based on the existence of the relationship of master and servant and did make the employees of a subcontractor the employees of the principal contractor for the purposes of the act. The Court further held that any reasonable doubt as to the liability of the city for compensation was set at rest by the concluding paragraph of § 12 of the act which then provided, and now provides, that nothing in the act shall be construed to make the employees of an independent contractor the employees of the person employing or contracting with the independent contractor.[2]

In 1924, after the decision in the Bamber case in that year, § 20(a) of the statute was amended. It is now in four paragraphs and in the first three, the respective obligations of the owner, the contractor and the subcontractor are set out, and it is provided that when any one of them undertakes to perform any work which is part of his trade, business or occupation, and contracts with another person to do all or any part of the work, he is liable to pay to any workman employed on the work any compensation which he would have been liable to pay if the workman had been immediately employed by him.

The amended § 20(a) came before the court in Sykes v. Stone & Webster Eng. Corporation, 186 Va. 116, 41 S.E.2d 469. That suit was brought against a general contractor for the wrongful death of an employee of a subcontractor engaged in the erection of a power station; and the court sustained the defense that the action could not be maintained because provision had been made for the payment of compensation, and when this is done, § 12 of the act provides that all other rights and remedies of the employee at common law or otherwise are excluded. The plaintiff contended that although provision had been made for compensation, the suit could be maintained because of the final paragraph of § 12 which provided that nothing in the act should be construed to make the employees of an independent contractor the employees of the person employing or contracting with such independent contractor, but the court held that this section should be construed and reconciled with § 20(a). The court said 186 Va. pages 122, 123, 41 S.E.2d page 472:

"The section makes the owner liable if the workman, no matter how far down the line, is doing work which the owner has undertaken to perform as a part of his own trade, business or occupation. But if the work which the workman is doing is not a part of the trade, business or occupation of the owner, and the owner contracts with a contractor to do it, the contractor is liable to the workman, but not the owner. As between the owner and such contractor, the latter is an independent contractor, and the last paragraph of section 12, above

---

[2] Bamber v. City of Norfolk and other Virginia decisions are discussed in March-banks v. Duke Power Co., 190 S.C. 336, 2 S.E.2d 825.

quoted, declares that such workman shall not be taken to be the employe of such owner. And such liability remains on the contractor so long as any workman in the descending scale is performing work which is part of the trade, business or occupation of the contractor; but such liability does not extend to a workman who is performing work which may have some relation to the work of the original contractor but which is not a part of the trade, business or occupation of the original contractor.

"It clearly appears to be the purpose of section 20(a) to bring within the operation of the Compensation Act all persons engaged in any work that is a part of the trade, business or occupation of the original party who undertakes as owner, or contracts as contractor, to perform that work, and to make liable to every employe engaged in that work every such owner, or contractor, and subcontractor, above such employe. But when the employe reaches an employer in the ascending scale, of whose trade, business or occupation the work being performed by the employe is not a part, then that employer is not liable to that employe for compensation under section 20(a). At that point paragraph 5 of section 12 intervenes and the employe's right of action at common law is preserved."

■ In the pending case the defendant emphasizes the fact that § 20(a) of the statute was amended after the Bamber decision, so as to include the owner within the category of those who are required under certain circumstances to provide compensation not only for their own employees but also for the employees of contractors and subcontractors engaged upon work for the owner, no matter how far removed they may be from contractual relationship with the owner. The plaintiff on the other hand stresses the declaration in the last paragraph of § 12 to the effect that nothing in the act shall be construed to make the employees of an independent contractor the employees of the person contracting with the independent contractor. The Virginia decisions hold that the two sections must be construed together and clearly teach that an owner is not required to furnish compensation for the employee of a contractor

or subcontractor, and remains liable as a third party to the employee for negligence which causes injury, unless the work undertaken by the contractor is part of the owner's trade, business or occupation. When the work is not within the scope of the owner's business, and he undertakes to have it executed by an independent contractor, the latter's employees, to use the language of the last paragraph of § 12, are not considered "the employees of the person or corporation employing or contracting with such independent contractor."

■ The defendant inisists that the work upon which the plaintiff was engaged in this case was part of the defendant's business by reason of the fact that the work was being done in the building in which the defendant was conducting its business and was necessary to the conduct thereof. We do not think that this reasoning can be sustained. The defendant was in the business of selling merchandise and needed a storage warehouse to facilitate that activity; but it was not in the construction business, and when extensive alterations of the warehouse were deemed desirable, the defendant did not undertake to perform the work itself but employed a construction company to execute it. It was therefore free from the obligation to furnish compensation to the contractor's employees and remained liable for its torts.

■ It is not meant to say that the letting of work by an owner to an independent contractor necessarily and of itself relieves the owner from the obligations imposed by the Virginia statute. The nature of the work itself is the decisive factor, and it is generally held that under similar statutes that when the work is part of the owner's business he becomes subject to the act whether it is performed by his own employees or by the employees of an independent contractor. Thus it has been held that the cleaning of the windows in a factory building by an employee of an independent housecleaner was work done in the course of the owner's occupation. Fox v. Fafnir Bearing Co., 107 Conn. 189, 139 A. 778, 58 A.L.R. 861. Cf. American Radiator Co. v. Franzen, 81 Colo. 161, 254 P. 160, where the opposite conclusion was reached. On

the other hand, it was held in Perkinson v. Thomas, 158 Va. 699, 164 S.E. 561, that the proprietor of a saw mill was not required to furnish compensation to the employees of an independent contractor who undertook to buy, cut and deliver logs to the mill. See also Board of Sup'rs, Amherst County v. Boaz, 176 Va. 126, 10 S.E.2d 498.

It is obvious that it is not easy in all cases to draw the line between what is and what is not the owner's business, and as is usual in such a situation, the decisions of the court are difficult to reconcile, as will appear from the citations in the appended note where statutes substantially like that in Virginia were construed.[3] The controlling principle, however, is well stated and illustrated in King v. Palmer, 129 Conn. 636, pages 640, 641, 30 A.2d 549, page 552, where the court held that a statute like Virginia's did not require the trustees of a railroad company to pay compensation to an employee of an independent contractor who had undertaken to replace the entire heating and service system of the railroad's engine house. The court said:

"* * * We have regarded, however, the broad policy of the Workmen's Compensation Act; Bellow v. Notkins, 101 Conn. 34, 37, 124 A. 831; Massolini v. Driscoll, 114 Conn. 546, 553, 159 A. 480; and in effect have held that the words 'process in the trade or business' included all those operations which entered directly into the successful performance of the commercial function of the principal employer. In this class of cases fall the washing of the windows of a factory; Fox v. Fafnir Bearing Co., 107 Conn. 189, 193, 139 A. 778, 58 A.L.R. 861; the placing of the calks in the shoes of horses by a driver engaged in collecting ashes for a city which had contracted out the performance of that function; Massolini v. Driscoll, supra; and the removal of rubbish in connection with the operation of a store; Hoard v. Sears, Roebuck & Co., Inc., 122 Conn. 185, 189, 188 A. 269. On the other hand, where the work in which the employees is engaged does not directly enter into the performance of the commercial function of the claimed principal employer but only affords facilities for the conduct of his trade or business, we have held that the work is not a 'process' in that trade or business. This is so as regards the construction of a factory building; Bogoratt v. Pratt & Whitney Aircraft Co., 114 Conn. 126, 136, 157 A. 860; and the construction of a partition in a factory; Brown v. Waterbury Battery Co., 129 Conn.

---

[3] The corresponding English statute is strictly construed. Thus it was held that an employee of a contractor who had undertaken to unload and pile wood in the yard of a manufacturer of wood mouldings was not engaged in the manufacturer's business; Hockley v. West London Timber & Joinery Co. (1914) 3 K.B. 1013; and that a shipowner was not required to pay compensation to the employee of a contractor engaged to scale the ship's boilers, Luckwill v. Auchen S/S Co., 108 L.T.N.S. 52 (CA1913); In Massachusetts, it was held that a teamster employed by one who was under contract to furnish teams and services to a lumberman was engaged upon the lumberman's business; Fontaine's Case, 274 Mass. 75, 174 N.E. 268; but that an employee of a contractor who had undertaken to make general repairs to an owner's property could not collect compensation from the owner; Corbett's Case, 270 Mass. 162, 170 N.E. 56, and that a hotel corporation, whose business included the construction of hotel buildings, was obliged to furnish compensation to an employee of an independent contractor who had agreed to erect an addition to a hotel of the defendant; Willard v. Bancroft Realty Co., 262 Mass. 133, 159 N.E. 511. In Vermont, compensation by a creamery company was denied to an employee of a contractor engaged in the construction of a new building for the company; Packett v. Moretown Creamery Co., 94 Vt. 97, 99 A. 638, L.R.A.1918F, 173, but an employee of a teamster under contract to furnish teams to a lumber company was held to be engaged in the company's business; O'Boyle v. Parker-Young Co., 95 Vt. 58, 112 A. 385. In Idaho, a like decision was made, Fisk v. Bonner Tie Co., 40 Idaho, 304, 232 P. 569. In Michigan, the employee of a contractor who had agreed to repair the boilers of a manufacturer of household utensils was held to be engaged upon the manufacturer's business; Burt v. Munising Wooden Ware, 222 Mich. 699, 193 N.W. 895. In Kansas, an employee of a contractor who was erecting a derrick for an oil company was granted compensation from the oil company; Purkable v. Greenland Oil Co., 122 Kan. 720, 253 P. 219.

810

44, 50, 26 A.2d 467 [150 A.L.R. 1210]. If the work is of such a character that it ordinarily or appropriately would be performed by the principal employer's own employees in the prosecution of its business, or as an essential part in the maintenance thereof, it is a part or process of his work."

█ This test carries out the chief purpose of enactments like the Virginia statute which is to "protect the employees of sub-contractors who are not financially responsible and to prevent employers from relieving themselves of liability (for compensation) by doing through independent contractors what they would otherwise do through direct employees." See Notes 58 A.L.R. 872; 105 A.L.R. 580. The statute was not intended to relieve employers from liability for their own negligence which causes injury to the employees of independent contractors engaged in the performance of work for employers outside the scope of the latter's occupation.

The judgment of the District Court is Affirmed.