# THE STATE OF NORTH DAKOTA, Respondent, v. JOHN EHR, Appellant.

(204 N. W. 867.)

**Instructions — examined and held correct.**

1. Instructions examined and, for reasons stated in the opinion, held correct.

**Intoxicating liquors — sale of intoxicating liquor in public street in front of residence of accused who owned fee to middle of street held to constitute bootlegging.**

2. Where, in a prosecution for bootlegging under chapter 194, Sess. Laws, 1915, it appears that the sale took place in a public street in front of the residence of the defendant who was the owner of the fee to the middle of such street, it is held that the sale was made in a "public place . . . not owned, kept, maintained or controlled" by the defendant, within the meaning of chapter 194, defining the crime of bootlegging.

Opinion filed June 29, 1925.

Intoxicating Liquors, 33 C. J. § 223 p. 598 n. 80; § 547 p. 790 n. 35.

Appeal from District Court of Richland County, *McKenna*, J. Affirmed.

*J. A. Dwyer, W. E. Purcell,* and *Lauder & Lauder,* for appellant.

"The abutter has the exclusive right to the soil, subject only to the easement of the right of passage in the public, and the incidental right of properly fitting the way for use. Subject only to the public easement, he (the owner) has all the usual rights and remedies of the owner of the freehold." Elliott, Roads & Streets, p. 519.

"The public has only the easement in streets and highways, the fee remaining in the original owner or his successors, and that such owner may exercise such acts of ownership thereto as are not inconsistent with the easement." Railway Co. v. Lake, 10 N. D. 541.

*Geo. F. Shafer,* Attorney General, and *C. E. Lounsbury,* States Attorney and *W. L. Divet,* Assistant State's Attorney, for respondent.

Corroborating evidence may be received in a bootlegging case to show purpose, intent and plan. State v. Stanley, 38 N. D. 311.

"There is an essential distinction between urban and suburban high-

ways, and the rights of abutters are much more limited in the case of urban streets than they are in the case of suburban ways." Kincaid v. Ind. Natural Gas. Co. 24 N. E. 1066.

"When opened, streets are usually subject to the control and regulation of the municipality, subject to the paramount authority of the State." 28 Cyc. 849; State v. Redlodge (Mont.) 76 Pac. 758.

"The streets of a city are in the possession and control of the city, and a party owning and occupying a lot abutting on such street cannot maintain an action for possession of any portion of the street, or to eject any other party therefrom who occupies by lawful consent of the city. If plaintiff had any cause of action at all under the pleadings, it was one solely for damages." Dewey v. Chicago, B. & Q. R. Co. (S. D.) 158 N. W. 408.

"Where the question was as to whether a certain liquor was intoxicating, and the state introduced the liquor in evidence, it was proper to instruct the jury that they inspect the liquor, may look at it, smell of it, taste it, and determine whether it is or is not intoxicating, subject to the limitation that they must not drink such a quantity as, if it were intoxicating, would make them drunk." Morse v. State, 10 Ga. App. 61, 72 S. E. 534.

JOHNSON, J. Defendant was tried and convicted of the crime of bootlegging, under chapter 194, Sess. Laws, 1915. In the information, as originally filed, he was charged with having sold intoxicating liquor in Richland county, but in a bill of particulars, furnished on demand and in obedience to an order of the court, the sale was alleged at Hankinson.

The testimony of the state tended to show that the defendant has sold a pint bottle of liquor to a detective or secret service man, in a street in Hankinson and in front of defendant's home. Defendant, testifying in his own behalf, denied the charge.

Ten errors are assigned. Eight assignments challenge the instructions, and two are based on rulings in admitting evidence. Assignments two and three assert error based on the alleged failure of the court to advise the jury that the state charged and must prove that the defendant sold the liquor within the limits of Hankinson in Richland county. The assignment is without merit. The learned trial court

distinctly told the jury, at least four times, that the state must prove the sale to have been made in the city of Hankinson. The same must be said of the fourth assignment. It is true the court said that the state must prove beyond a reasonable doubt the material allegations of the information, (one of which originally had been that the sale took place in Richland county); the court, however, directly thereafter said that one of such material allegations was that the sale was made in Hankinson. The duty of the state in this regard was clearly stated by the court. It is inconceivable that the jury could have been misled by the part of the charge which appellant segregates and alleges to be erroneous.

The fifth assignment attacks an instruction which was as follows:

"In this case the evidence on behalf of the State has been largely given by paid investigators or detectives. I instruct you that the fact that the witness is or is not paid investigator or detective does not determine the question whether such witness does or does not tell the truth, and the mere fact that witnesses testifying in this case may be paid investigators or detectives does not justify you in disregarding their testimony, although the fact that they are paid investigators or detectives is one which you are entitled to and should take into consideration in determining whether they are or are not telling the truth. If you are satisfied that their testimony is true after taking into consideration all the other facts and circumstances as disclosed by the evidence, comparing their testimony with the testimony of other witnesses in the case, you should give their testimony the weight that it should properly have. The state's attorney of this county has a lawful right to employ such investigators or detectives, and you have a right to believe them. All the law requires in considering such evidence is that it be carefully scrutinized by you to ascertain *whether or not the testimony of such witness is biased or whether the interest or service has influenced such witness to an extent that would reflect upon the effect of his testimony. If you are of the opinion that such witness is biased or that his testimony is influenced by his service or his interest in the case, or that he is not telling the truth, then you should give such testimony as little weight as is proper,* but on the other hand if you are satisfied that such witness is telling the truth,

then you should give to such evidence the same weight as you would that of any other witness."

We do not believe it is necessary to cite many authorities in support of the correctness of this instruction. Assuming that it be true that a paid investigator tends to become biased against the accused and that the desire to justify the confidence of the authorities in his skill as a detective may, consciously or unconsciously, give his testimony a color favorable to the prosecution, we are satisfied that the learned trial court directed the attention of the jury to this possibility with respect to the testimony of the investigators in such a way that the defendant cannot fairly complain. We think that the portion emphasized by the appellant himself clearly and as fairly as the defendant could legally require, warned the jury to scrutinize this class of evidence with care, and, if they believed bias existed to discount the testimony accordingly. See Com. v. Mason, 135 Mass. 555; Com. v. Ingersoll, 145 Mass. 231, 13 N. E. 613.

Assignments six and seven relate to the introduction of the bottle alleged to have been sold and the instructions of the court to the effect that the jury were at liberty to take the exhibit with them to the jury room, and that "it is to be taken into consideration by you in arriving at your verdict in this case, and you shall give it such weight as you deem it entitled to under the evidence and these instructions." No authorities are cited in support of the assignment. It is said that the jury could not derive any assistance from the presence of the exhibit unless the contents were tasted, smelled or imbibed by the members for the purpose of determining whether the liquid was intoxicating; that upon his point jurors could not be cross-examined, etc.

The exhibit had on it certain identification marks, put thereon by the chemist who analyzed the contents, and by the investigators. The chemist who analyzed the liquor stated that it had an alcoholic content of 55.9 per cent, and other witnesses testified that the liquor was intoxicating. There is no dispute on that point. We do not think that prejudicial error was committed in permitting the jury to take this exhibit to the jury room. It was proper to permit them to examine it, with all its marks of identification. The instruction is not open to the construction that the jurors were authorized to drink or taste the contents. The bottle was sealed when introduced; it is sealed still.

It is evident that the jury neither smelled nor tasted the contents. The pint bottle, as it appears in the record, is sealed and approximately half filled with a liquid which the unanimous and undisputed testimony shows to be intoxicating. Generally, it is not error to permit jurors to inspect during their deliberations exhibits of personal property introduced in the case where it does not appear that such exhibits were "handled or used" in a manner inconsistent with the evidence. 12 Cyc. 677. See § 7624, Comp. Laws, 1913 and Rolette State Bank v. Minnekota Elevator Co. 50 N. D. 141, 195 N. W. 6. There is nothing whatever to indicate that any improper use was made of the exhibit by the jurors during their deliberations. The jury were not advised that members could *taste, smell* or *drink* the contents; and there is no evidence, hint or suggestion that the exhibit was, in point of fact, misused by them. We are satisfied the error, if any, in admitting the exhibit or in the instructions pertaining thereto, was entirely without prejudice.

When, or under what circumstances, if ever, it is proper to permit the jury to take with them, when they retire to deliberate, exhibits of liquor claimed to be intoxicating, or to smell or taste the same for the purpose of determining its intoxicating quality, is not decided. That question is not involved in this case. There is conflict in the authorities on this subject. See State v. Coggins, 10 Kan. App. 455, 62 Pac. 247; State v. Simmons, 183 N. C. 684, 110 S. E. 591; Com. v. Brelsford, 161 Mass. 61, 36 N. E. 677; People v. Kinney, 124 Mich. 486, 83 N. W. 147; State v. Olson, 95 Minn. 104, 103 N. W. 727; Richardson v. State, 23 Ariz. 98, 201 Pac. 845; State v. Schmidt, 71 Kan. 862, 80 Pac. 948.

Assignments nine and ten challenge as erroneous an instruction, really a part of the definition of reasonable doubt, as follows: "You are not at liberty to disbelieve as jurors if from the evidence you believe as men, and the oath which you have taken as jurors imposes no obligation to doubt where no doubt would have existed if you had not taken such oath." It is urged that this instruction is confusing, and makes of "reasonable doubt" a meaningless phrase; also that it is an invitation to the jury to disregard their oath. The contention is wholly unsound. The sentences to which exception is taken, occur near the end of the portion of the charge dealing with the subject of reason-

able doubt. The learned trial court very clearly and with entire technical correctness had explained the meaning and implications of "reasonable doubt." The charge as a whole completely, clearly and with evenhanded fairness expounds the law upon all the issues raised, and the exception to the quoted portion cannot be sustained.

The witness Swenson, a deputy sheriff, was permitted, over objection to testify that he had seen a large number of bottles similar to Ex. 1; Keeler had testified that defendant drove away from his home in the city and later returned with Ex. 1. The testimony shows that defendant was present when the search was made. It is claimed that this was prejudicial error as the jury may well have based their verdict on supposed sales at the farm.

The charge was bootlegging. There was no hint or evidence of a sale elsewhere than in Hankinson; there was no evidence of sales at the farm. Had these bottles been found in his home, identical with or similar to Ex. 1, there seems no doubt that the evidence would have been admissible. The fact that they were found on his farm, does not, in the circumstances, alter the situation. We think the evidence tended to corroborate the testimony of the State's witnesses and it was not error to admit it.

There remains but the ninth assignment to be considered. It is alleged that the following instruction was erroneous:

"And therefore, if you are satisfied that the defendant made a sale of intoxicating liquor, namely a pint bottle of liquor which was intoxicating under the definition of intoxicating liquor which I have given you, and that he sold some to the witness Robert Keeler or the witness E. D. Wheeler, on or about November, 1923, and actually delivered the same and received two dollars as the purchase price of such liquor, *and said sale was made on a public road or highway in the city of Hankinson,* in this county and state, *even though such road or highway was in front of premises occupied by the defendant and owned by him,* then I charge you that the State has sufficiently established the crime of bootlegging, and it would be your duty to find the defendant guilty."

Section 1, chapter 194, Sess. Laws, 1915, defining the crime of bootlegging reads:

"Any person who shall sell or barter any intoxicating liquor *upon*

*any premises or place, public or private* within the State of North Dakota, *not owned, kept, maintained* or controlled by him; or, who shall act, directly or indirectly, with or without compensation, as the agent of another in connection with the purchase, or sale of intoxicating liquors; or, who shall solicit, procure or receive from any person, any order, providing for the purchase, sale or furnishing of intoxicating liquors, either for delivery from within or from without this state, except from those authorized by law to sell or barter the same within this state; or, who shall aid, assist or abet in the commission of such crime, shall be guilty of the crime of bootlegging."

This chapter specifically repeals § 10,144, Comp. Laws, 1913. In due time referendum petitions were filed suspending the operation of chapter 194, and, at the general election held November 7, 1916, the chapter was adopted, Sess. Laws, 1917, p. 410. We refer to this legislative history for the reason that there is a controversy in the briefs of counsel as to whether the prosecution is under chapter 194, Sess. Laws, 1915, or such chapter as it appears in the Session Laws of 1917. There was, of course, no new legislation on the subject in 1917, there was merely a referendum, which resulted in a popular approval of the law of 1915.

The contention is that the public street in front of defendant's residence was "owned, kept, maintained, or controlled" by him as the owner of the fee, and that a sale therein did not constitute the crime of bootlegging, as defined by the statute, because in Donovan v. Allert, 11 N. D. 289, 58 L.R.A. 775, 95 Am. St. Rep. 720, 91 N. W. 441, this court held that the fee in the street to the center thereof belonged to the abutting owner, except as conveyed to the public for street purposes. In the language of this court in Northern P. R. Co. v. Lake, 10 N. D. 541, 88 N. W. 461; it is urged that "The public has only the easement in the streets and highways, the fee remaining in the original owner or his successors, and that such owner may exercise such acts of ownership thereto as are not inconsistent with the easement." Counsel illustrates his position by a hypothetical question, thus: "Should a person step out on the public street in front of his own dwelling house and hand a person there a bottle of whiskey and receive in return two dollars in money, would he thereby commit an act inconsistent with or in any wise interfering with the right of the public to use

the soil as a street? To us at least the question is not a debatable one." We agree with counsel that the question is scarcely debatable, but not for the reasons suggested by him. We think it is settled law that the streets of a city are in the possession and under the control of the city, subject to the paramount right of the state itself. See § 3599, subsections 6–8, 14, 20, and 71 thereof; Dewey v. Chicago, B. & Q. R. Co. 37 S. D. 390, 158 N. W. 408; 28 Cyc. 849, 859. A sale of intoxicating liquor "upon any premises or place, *public* or private, . . . not owned, kept, maintained, or controlled" by the defendant, is bootlegging. The street is a *"public* place;" it is distinctly not "private premises" or a "private place." It is a public highway. Does the abutting owner *own* the street, within the contemplation of the statute? Clearly not. He owns the fee, it is true, but it is a naked ownership, without control or power to deal with the land in any manner inconsistent with the public purpose to which it has been dedicated. The owner of the fee would have no better legal right to set up a peanut stand in the street in front of his home or his place of business than any other person; the control of the street is in the municipality and the state, not in the owner of the fee. There is nothing in the cases from this court, cited by appellant, in conflict with this view. It has been held that a building is not under the "control" of the owner, within the meaning of the liquor laws, when it is occupied by a tenant under a general lease. Com. v. Wentworth, 146 Mass. 36, 15 N. E. 138, 141. One may have "control" of premises and not be the legal owner; and, the legal owner may be without such control. In general, to have "control" of a place is to have the authority to manage, direct, superintend, restrict or regulate. We are of the opinion that a sale of intoxicating liquor, in a public street, by the owner of the fee, is a sale in a "public place" not "owned, kept, maintained or controlled" by him, and the vendor is guilty of the crime of bootlegging.

Judgment affirmed.

CHRISTIANSON, Ch. J., and BURKE, BIRDZELL, and NUESSLE, JJ., concur.