CARMEN MANCINI ET AL. *v.* BUREAU OF PUBLIC WORKS OF THE METROPOLITAN DISTRICT

JOHN LACAPRA ET AL. *v.* THE METROPOLITAN DISTRICT

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

190

Argued June 6—decision released August 27, 1974

*Jerome E. Caplan,* with whom was *Steven D. Bartelstone,* for the appellants (named plaintiff et al.) in the first case.

*Robert M. Dombroff,* with whom, on the brief, were *Walter E. Schatz* and *Edward G. Pizzella,* for the appellant (named plaintiff) in the second case.

*Raymond B. Green,* with whom was *Charles W. Page,* for the appellee (defendant) in each case.

LOISELLE, J.   The plaintiffs, Carmen Mancini and Patrick J. Joyce in one action, and John LaCapra in another, sought to recover from the defendant

for injuries and damage incurred when an after-blast of dynamite occurred in the area where they were working. Each plaintiff brought an action in two counts, one based on negligence, and a second on absolute liability. The negligence counts were framed in terms of the defendant's own negligence in failing to take preventive measures to protect the plaintiffs although it knew that the work to be performed on its behalf involved an inherently dangerous operation, and that injury and damage would naturally and obviously result unless precautions were taken. Cf. *Bonczkiewicz* v. *Merberg Wrecking Corporation*, 148 Conn. 573, 172 A.2d 917. The absolute liability counts charged that the work performed on behalf of the defendant involved an inherently dangerous operation which necessarily or obviously exposed the plaintiffs to injury and which caused their injuries. After a joint trial, the jury returned separate verdicts on each count for the defendant, and the plaintiffs joined in filing this appeal.

The plaintiffs claimed to have proved the following:[1] The vast majority of sewers laid on behalf of the defendant were laid by independent contractors, but some were laid by the defendant's employees. The defendant's charter authorized the defendant to build, create, maintain, alter or repair sewers throughout its district. In July, 1963, the defendant entered into a contract with Helm Construction Company, hereinafter referred to as Helm, to install a sewer line in the town of Rocky Hill. The contract required Helm to remove any rock

---

[1] The plaintiffs have attacked one paragraph in the defendant's offer of proof as unsupported. As the defendant failed to include an appendix to its brief, this paragraph is stricken. The plaintiffs have not pursued any other attack on the finding in their brief.

found during excavation and provided for additional payments for this work. The removal of rock would frequently require blasting, and the specifications of the contract contained provisions regulating the transportation, storage and handling of explosives.

On Wednesday, December 11, 1963, dynamite was exploded in a certain area in the trench under the direction of an employee of Helm. Five holes had been drilled for the blast, and three sticks of dynamite had been placed in each hole. Four instantaneous- and six delayed-blasting caps had been used to detonate the dynamite. Only seven of the sticks of dynamite and five of the caps exploded, leaving eight sticks of dynamite and five blasting caps unexploded. On Friday, December 13, 1963, the plaintiffs were working in the area of the trench when the plaintiff Mancini, operating a jack hammer, hit a blasting cap causing the explosion which injured the plaintiffs. The cap and dynamite which exploded on that day were from a hole in which dynamite had been placed on the previous Wednesday.

The defendant claimed to have proved that it was subject to workmen's compensation laws, and was authorized by its charter to build, create, maintain, improve, alter or repair sewers.

The claims of proof of the plaintiffs and the defendant were far more extensive, but the above-recited facts are sufficient to discuss the dispositive issue on appeal.

Under § 31-291[2] of the General Statutes, the principal employer of an independent contractor may be

[2] "[General Statutes] Sec. 31-291. PRINCIPAL EMPLOYER, CONTRACTOR AND SUBCONTRACTOR. When any principal employer procures any work to be done wholly or in part for him by a contractor, or through him by a subcontractor, and the work so procured to be done is a part or process in the trade or business of such principal employer,

liable to pay for injuries sustained by an employee of the latter under the Workmen's Compensation Act. If a principal employer is liable for compensation under the act, the employee is barred from any common-law action against it. *Farrell* v. *L. G. DeFelice & Son, Inc.*, 132 Conn. 81, 89–91, 42 A.2d 697; *Zimmerman* v. *MacDermid, Inc.*, 130 Conn. 385, 388, 34 A.2d 698; *Bogoratt* v. *Pratt & Whitney Aircraft Co.*, 114 Conn. 126, 133–35, 157 A. 860. The defendant pleaded its liability as a principal employer under this statute as a special defense to each count of each plaintiff's complaint.

The court correctly charged the jury as follows: "Three main essentials are involved in the statute. One, the relation of the principal employer and contractor must exist in work wholly or in part for the former. Two, the work must be in, on or about premises controlled by the principal employer; and, three, the work must be a part or process in the trade or business of the principal employer." See *Kasowitz* v. *Mutual Construction Co.*, 154 Conn. 607, 611, 228 A.2d 149; *Battistelli* v. *Connohio, Inc.*, 138 Conn. 646, 649, 88 A.2d 372; *Crane* v. *Peach Bros.*, 106 Conn. 110, 113, 137 A. 15. The plaintiffs contend, however, that the court subsequently committed error because the charge on this special defense, in effect, directed the jury to find two of the elements for the defendant, and because the charge improperly guided the jury and failed to direct the jury to find for the plaintiffs on the remaining element, control of the premises.

and is performed in, on or about premises under his control, such principal employer shall be liable to pay all compensation under this chapter to the same extent as if the work were done without the intervention of such contractor or subcontractor."

For a general discussion of this statute, see Wolf, "An Analysis of the Principal Employer Statute," 29 Conn. B.J. 318.

After the outline of the three factors quoted above, the court discussed each one in greater detail. On the first element, the court charged as follows: "The . . . first requirement you should have little trouble with as all parties practically admit this fact. That is the relation of principal employer and contractor must exist in work wholly or in part for the former." After discussing the element of control of the premises, the court proceeded to charge the jury on the "part and process" requirement: "[O]f course you know that we have before us here the Charter of the company and the Charter of the company says that the Metropolitan District was engaged in the construction, that they had powers, at any rate, under this Charter to construct sewers and I think some of the evidence was presented to you here to the effect that not only did the Metropolitan District hire independent contractors to dig sewers or to construct sewers but they also did it on their own. So, I don't think you will have very much trouble in deciding that question because if the work is of such character that it ordinarily or appropriately would be performed by the Metropolitan District's own employees in the performance of its business, or as an essential part in the maintenance thereof, it is part and parcel of the work of the Metropolitan District, otherwise not." In addition to the instructions directly involved with the issue of the principal employer-contractor relationship, and the "part and process" requirement, the court's charge on control also instructed on how the jury were to deal with the other two elements. Immediately after first discussing the principal employer issue, the court stated: "The real controversy revolves around the question as to whether the area where the blasting was being done was in, on or

about the premises controlled by the defendant within the purview of the statute." On three subsequent occasions, in distinguishing between control as it arose in another defense and control of the premises under the workmen's compensation statute, the court's instructions were substantially as follows: "If under the principal employer defense you find that Helm was in control of the premises then this defense would be of no avail on the part of the defendant. If you find that the defendant has proven it was in control of the premises, this would defeat the plaintiffs on all counts." On none of these occasions did the court mention the other two elements required under the statute. The cumulative effect of these instructions was to limit the jury's consideration of this defense to whether the defendant had established that it had control of the premises.

On occasion, some or all of the elements of the statute have been removed from the consideration of the jury. See *Gigliotti* v. *United Illuminating Co.*, 151 Conn. 114, 118, 193 A.2d 718; *Hoard* v. *Sears Roebuck & Co.*, 122 Conn. 185, 188 A. 269. Generally, however, whether the work in which the independent contractor is engaged is a "part or process in the trade or business" of the principal employer is a question of degree and fact. *Grenier* v. *Grenier,* 138 Conn. 569, 571, 87 A.2d 148; see *Gigliotti* v. *United Illuminating Co.,* supra, 120. The plaintiffs contend that there was no evidence as to whether the defendant had engaged in blasting when laying sewer lines. Although there is some support for the argument that the "work to be done" is to be given this narrow construction; cf. *Battistelli* v. *Connohio, Inc.,* supra; *Crane* v. *Peach Bros.,* supra; doing so would contravene the frequent sup-

port given to a broad interpretation of the act. See *King* v. *Palmer,* 129 Conn. 636, 640, 30 A.2d 549; *Massolini* v. *Driscoll,* 114 Conn. 546, 553, 159 A. 480. Furthermore, under the terms of the statute, the actual cause of the injury is irrelevant to its applicability. Consequently, the absence of any showing that the defendant engaged in blasting is not fatal to the defense.

"[T]he words 'process in the trade or business' . . . [include] all those operations which entered directly into the successful performance of the commercial function of the principal employer." *King* v. *Palmer,* supra, 640–41. The issue has also been framed in terms of whether the defendant's employees ordinarily or appropriately would perform the work in question; *Kasowitz* v. *Mutual Construction Co.,* supra, 613; *Gigliotti* v. *United Illuminating Co.,* supra, 119; *Grenier* v. *Grenier,* supra; although this test is not necessarily conclusive. See *Fox* v. *Fafnir Bearing Co.,* 107 Conn. 189, 195, 139 A. 778. Taking a broad approach, the "work" to be performed by Helm for the defendant can be characterized as laying sewer lines. Given that the defendant's charter authorized such construction, and that the plaintiffs' own claims of proof contain the statement that some of the sewers laid on behalf of the defendant were laid by the defendant's employees, the court did not err in directing the jury on this issue. Cf. *Massolini* v. *Driscoll,* supra, 553.

For different reasons, the same conclusion applies to the instructions on whether the defendant, as "principal employer," had procured "any work to be done wholly or in part for him by a contractor." There can be no doubt under the evidence presented in this case that the plaintiffs' immediate employer, Helm, was performing work for the defendant. For

the limited issue of the special defense that the Workmen's Compensation Act afforded the plaintiffs their sole remedy, the question of fact foreclosed by the court's instruction—Helm's status as an independent contractor—was not determinative. "If the work is part or process of defendant's business and done on or about its premises, whether performed by an independent contractor or not, the work comes within the provisions of the Workmen's Compensation Act and the defendant is liable thereunder." *Hoard* v. *Sears Roebuck & Co., supra,* 190.

The plaintiffs next argue that the court erred in its instructions on the remaining element of the statute, the requirement that the work be "performed in, on or about the premises under . . . [the principal employer's] control." The plaintiffs contend that the court erred in submitting this question to the jury, first, because as a matter of law, under the circumstances of this case, there can be no "premises" under the defendant's control, and second, because there was insufficient evidence on control by the defendant.

The plaintiffs rely on *Bates* v. *Connecticut Power Co.,* 130 Conn. 256, 33 A.2d 342, in which compensation was denied where the decedent was an employee of a contractor engaged in erection of power lines along a public highway. This court upheld the determination of the trial court that the defendant had failed to prove that it had control of the premises, quoting the following in support (p. 261): "Speaking of 'premises,' *Buckley, L.J.,* in *Andrews* v. *Andrews & Mears,* [1908] 2 K.B. 567, 570, says: 'That word implies some definite place with metes and bounds, say land, or land with buildings upon it. A public street is not, in my opinion, within these

words at all.' In *Doherty's Case,* 294 Mass. 363, 365, 2 N.E.(2d) 186, occurs the statement: 'Certainly the highway was not "under the control or management of the insured." '[3] In *State* v. *Ehr,* 52 N.D. 946, 953, 204 N.W. 867, in holding that an abutting owner did not own or control the street in front of his premises, the court said: 'In general, to have "control" of a place is to have the authority to manage, direct, superintend, restrict or regulate.' "

"Most compensable injuries are due to conditions of employment the danger from which could be prevented or minimized by sufficient oversight or control. The underlying purpose of the restriction as to the place of employment in the various acts was obviously to limit liability to those situations where such conditions might be assumed to be largely within the control or observation of the principal employer." *Wilson* v. *Largay Brewing Co.,* 125 Conn. 109, 112, 3 A.2d 668. The proposition that the public highway did not constitute a "premises" over which the defendant in *Bates,* supra, exercised con-

---

[3] In *Doherty's Case,* 294 Mass. 363, 2 N.E.2d 186, the decedents were killed while transporting a principal employer's goods from Albany, New York, to Boston. The Massachusetts Supreme Judicial Court concluded that the public highways connecting these two cities were not a "premises" and that consequently there was no coverage under a compensation statute which provided that it would " 'not apply . . . to any case where the injury occurred elsewhere than on, in or about the premises on which the contractor has undertaken to execute the work.' " Id., 365. In closing, the court noted (p. 368): "We do not mean to intimate that if the contractor has engaged to perform work in or upon the highway itself, such as construction of the way, paving, laying pipes or other work which is distinct from the uses of the way for purposes of travel, those portions of the way upon which such work is actually done might not be deemed to be 'the premises on which the contractor has undertaken to execute the work' . . . . We now decide only that . . . [the statute] does not apply to work on a public way which consists merely in using the way under the public right for the purpose of travel."

trol was sound, within the facts of that case. Cf. *Wilson* v. *Largay Brewing Co.,* supra; *Downing* v. *Stamford Community Chest, Inc.,* 125 Conn. 728, 4 A.2d 329; contra, *Massolini* v. *Driscoll,* 114 Conn. 546, 159 A. 480. As can be seen in the memorandum of decision of the Superior Court[4] in *Bates,* however, the court's approach on review there was unnecessarily broad. In a later discussion of the requirement of control of the premises, this court stated: "[T]he fundamental and principal intent of the legislature in using the phrase in question was to limit the principal employer's responsibility for accidents to such accidents as occurred within a definite, specified area. The use of the phrase 'under his control' is merely descriptive of that area. It is used instead of such words as 'owned by him' or 'in his possession' in order to describe the area in a more inclusive fashion. The emphasis is upon limitation of the area within which the accident must happen rather than upon actual control of the implements which caused the accident." *Crisanti* v. *Cremo Brewing Co.,* 136 Conn. 529, 535, 72 A.2d 655. Under this approach, and under a careful reading of *Bates,* supra, we conclude that, in some circumstances, portions of a public highway in which work is being performed may be a "premises" so as to satisfy the requirement of the statute. Conse-

---

[4] In its memorandum of decision, the trial court pointed out that the stipulation of facts filed by the parties indicated that the decedent was standing in the traveled portion of the highway and not within the fixed limits of any defined right-of-way. After agreeing with the defendant's contention that permanent control was unnecessary, the court also noted that the stipulation failed to suggest that any steps had been taken to mark off an area of the highway so as to establish or maintain control over a portion of it and that the effect of such a procedure was not at issue. In the present case, digging ditches and laying the sewer pipeline was necessarily within a definite right-of-way.

quently, the issue of whether the court should have directed this factual question for the plaintiffs turns upon the presence of any evidence from which the jury could conclude, either directly or by reasonable inference, that the defendant was in control of the premises. Cf. *Martino* v. *Palladino,* 143 Conn. 547, 548, 123 A.2d 872; *Loomis* v. *Norman Printers Supply Co.,* 81 Conn. 343, 347, 71 A. 358; *State* v. *Benton,* 161 Conn. 404, 410, 288 A.2d 411.

The finding discloses the following claims of proof of the plaintiffs relevant to the issue of control of the premises: The defendant entered into a contract with Helm to install a sewer line. The specifications of the contract provided, in part, that "[t]he work will be conducted under the supervision of the Engineer [a deputy manager in the Metropolitan District] acting through assistants and inspectors . . . . They shall have access to the work at all times when proper for the full discharge of their duties, both at the site of the work and also at the sources of material." The contract also required Helm to employ only competent workers, and provided that the defendant's engineer could require Helm to discharge any employee who was incompetent, disorderly or detrimental to the good progress of the work. James Jewett, employed by the defendant as an inspector, was assigned to the job by the defendant's engineer to protect the defendant's interests. The plaintiff, Mancini, saw Jewett on the job almost every day. Jewett could intervene and deal with Helm on matters needing immediate attention. The defendant was not only interested in laying the pipe, but also in the general safety of the area and in the correct performance of the work. The plans which are part of the contract depict a right-of-way for the defendant's sewer

line which in part runs within the limits of the highway. The defendant secured a permit for this job from the state highway department. This permit gave the defendant the right to excavate in the public highway. The job site was within the limits of the public highway. Alfred Quintilano, the police chief of the town of Rocky Hill, noted that the signs on the horses and equipment in the area of the accident were Helm's.

The defendant made the following claims of proof relevant to this issue: Jewett did not control the work in any way, but he was in charge of the results of the work. Helm had a workmen's right-of-way to put its equipment around the trench or nearby, which it was granted by the defendant under the contract.

On these claims of proof, it was not error for the court to submit to the jury the factual question of whether the defendant was in control of the premises under § 31-291.

As there were no interrogatories, each verdict rendered by the jury on the two counts pleaded by each plaintiff was a general one. The plaintiffs have failed to demonstrate any error in the court's charge on the special defense which pleaded that the Workmen's Compensation Act provided their sole remedy. Accordingly, the verdict must stand. *Hally* v. *Hospital of St. Raphael,* 162 Conn. 352, 363, 294 A.2d 305; *Begley* v. *Kohl & Madden Printing Ink Co.,* 157 Conn. 445, 453, 254 A.2d 907; *Himmelstein* v. *General Electric Co.,* 144 Conn. 433, 436, 133 A.2d 617; *Meglio* v. *Comeau,* 137 Conn. 551, 553–54, 79 A.2d 187.

There is no error.

In this opinion the other judges concurred.