[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
The defendant, Whiting-Turner Contracting Company, moves for summary judgment as to the second count of the plaintiff's second revised complaint.
This action is brought pursuant to General Statutes § 52-555, Connecticut's wrongful death statute. The plaintiff, Nikki Valerio ("Valerio"), Executrix of the Estate of Joseph Valerio, filed a second revised complaint on March 26, 1992 as to the defendants, International Business Machines Corporation (Count One), Whiting-Turner Contracting Company (Count Two), and The Connecticut Light Power Company (Count Three).[1] The second revised complaint alleges the following facts. CT Page 8788
International Business Machines Corporation ("IBM") employed Whiting-Turner Contracting Company ("Whiting-Turner") to perform construction work on Kettletown Road in Southbury, Connecticut, and Whiting-Turner employed O G Industries, Inc. ("OG") to perform construction work at this location. Joseph Valerio ("decedent") was employed by OG and was present as a worker at the Kettletown Road jobsite on September 3, 1987; however, on that date he was electrocuted when a crane at the jobsite came into contact with an uninsulated 13,800 volt electrical power line of The Connecticut Light Power Company ("CLP"). The first count alleges that the decedent's death by electrocution was caused by IBM's negligence in various ways. Count two alleges that the decedent's death by electrocution was caused by Whiting-Turner's negligence. Count three alleges that the decedent's death resulted from the negligence of CLP.
IBM and Whiting-Turner filed an answer and a special defense to the second revised complaint on April 20, 1992, and Whiting-Turner filed a second special defense on August 25, 1993. The second special defense asserts that General Statutes §§31-284 and 31-291 preclude Valerio from maintaining this action against Whiting-Turner, because Whiting-Turner is a "principal employer" and the Workers' Compensation Act represents plaintiff's exclusive remedy with respect to this defendant.[2]
On October 13, 1993, Whiting-Turner filed a motion for summary judgment as to the second count of Valerio's second revised complaint, with an accompanying memorandum of law and supporting documentation. On April 20, 1994, Valerio filed a memorandum in opposition, accompanied by excerpts of deposition testimony, and OG, the intervening plaintiff; also filed a memorandum in opposition, dated May 10, 1994, with deposition testimony excerpts attached. Whiting-Turner filed a supplemental memorandum of law, with additional supporting documentation, on May 8, 1994.
"In deciding a motion for summary judgment, the trial court is limited to considering the pleadings, affidavits and other documentary proof submitted by the parties." (Citation omitted.)Orticelli v. Powers, 197 Conn. 9, 15, 495 A.2d 1023 (1985). Summary judgment "`shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" (Citations omitted.) Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573, CT Page 8789 578, 573 A.2d 699 (1990).
"`[T]he party seeking summary judgment has the burden of showing the nonexistence of any material fact[.]'" (Citation omitted.) Connell v. Colwell, 214 Conn. 242, 246, 571 A.2d 116
(1990). "`[A] party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue.'" (Citations omitted.) Id., 246.
Practice Book § 380 provides that a summary judgment motion "shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like." "`Mere assertions of fact, whether contained in a complaint or in a brief, are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § 380.'" (Citation omitted). Kakadelis v. DeFabritis,191 Conn. 276, 281, 464 A.2d 57 (1983).
In support of its motion for summary judgment, Whiting-Turner has attached copies of various contracts, uncertified copies of deposition testimony, affidavits from Whiting-Turner's project engineer and project manager, and a memorandum from the project engineer. In support of their respective oppositions, Valerio and OG have attached uncertified copies of deposition testimony.
"Uncertified copies of excerpts of deposition transcripts are not admissible as evidence and do not comply with the requirements of Practice Book § 380." Oberdick v. AllendaleMutual Insurance Company, 9 Conn. L. Rptr. 607, 608 (August 25, 1993, Celotto, J.). "Copies of uncertified and unauthenticated deposition testimony may not be used in deciding a motion for summary judgment." Balderston v. Shoals Construction, Inc.,9 Conn. L. Rptr. 343 (July 1, 1993, Lewis, J.). In the present case, even if the parties had attached certified copies of deposition transcripts, it is questionable whether they would be sufficient to support or oppose a summary judgment motion. The primary purpose of a deposition is discovery, and "[a] response to a question propounded in a deposition is not a judicial admission." Esposito v. Wethered, 4 Conn. App. 641, 645,496 A.2d 222 (1985). The court does not consider the uncertified copies of deposition testimony excerpts provided by Whiting-Turner, Valerio and OG in deciding this motion. CT Page 8790
Whiting-Turner moves for summary judgment on the ground that the principal employer defense, set forth in General Statutes §§ 31-284 and 31-291, as these statutes existed at the time of the alleged incident, precludes Valerio's claims against Whiting-Turner as a matter of law. It argues that this defense applies because Whiting-Turner and OG had a principal employer/subcontractor relationship in work that was done for Whiting-Turner, that the alleged incident occurred on premises controlled by the principal employer, and that the work performed by OG occurred as part or process in Whiting-Turner's trade or business.
Valerio counters that Whiting-Turner is not immune from civil liability under the principal employer defense. Valerio argues that there are genuine issues of material fact with respect to whether a principal employer/subcontractor relationship existed between Whiting-Turner and OG, and as to whether Whiting-Turner controlled the Kettletown Road jobsite. Valerio also contends that there is an issue of fact as to whether the work performed was part or process of Whiting-Turner's trade or business. OG opposes Valerio's motion on the same grounds.
At the time of the incident involving the plaintiff's decedent, September 3, 1987, General Statutes § 31-291
provided as follows:
 When any principal employer procures any work to be done wholly or in part for him by a contractor, or through him by a subcontractor, and the work so procured to be done is a part or process in the trade or business of such principal employer, and is performed in, on or about premises under his control, such principal employer shall be liable to pay all compensation under this chapter to the same extent as if the work were done without the intervention of such contractor or subcontractor.
General Statutes (Rev. to 1987) § 31-291. "Thus, an employee of the subcontractor is barred from any tort action against the principal general contractor as the employer pursuant to General Statutes § 31-284(a)." Sgueglia v. Milne Construction Co.,212 Conn. 427, 430, 562 A.2d 505 (1989). See also Mancini v.Bureau of Public Works, 167 Conn. 189, 193, 355 A.2d 32 (1974) CT Page 8791 (if principal employer liable for compensation under the act, employee is barred from any common-law action against principal employer).
At the time the incident occurred, General Statutes §31-284(a) provided that:
 An employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as follows, except that compensation shall not be paid when the personal injury has been caused by the wilful and serious misconduct of the injured employee or by his intoxication. All rights and claims between employer and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment as aforesaid are abolished other than rights and claims given by this chapter, provided nothing herein shall prohibit any employee from securing, by agreement with his employer, additional benefits from his employer for such injury or from enforcing such agreement for additional benefits.
General Statutes (Rev. to 1987) § 31-284(a).
The purpose of General Statutes § 31-291 is to protect the employees "of minor contractors against the possible irresponsibility of their immediate employers, by making the principal employer who has general control of the business in hand liable as if he had directly employed all who work upon any part of the business which he has undertaken to carry on." (Citations omitted; internal quotation marks omitted.) Sguegliav. Milne Construction Co., supra, 212 Conn. 433.
"The principal employer defense to an independent civil action applies if three conditions are met: (1) the relation of principal employer and subcontractor must exist in work done wholly or in part for the principal employer; (2) the work must be on or about the premises controlled by the principal employer; and (3) the work must be a part or process in the trade or CT Page 8792 business of the principal employer." (Citations omitted.) Pacileov. Morganti, Inc., 10 Conn. App. 261, 263, 522 A.2d 841 (1987).
The court finds that there is a question of fact concerning the second element of the principal employer defense, which requires that the work be performed on premises controlled by the principal employer.
In Mancini v. Bureau of Public Works, supra, 167 Conn. 189, the court discussed the statutory requirement "of control over the premises," and it explained that the legislative intent in using that phrase "was to limit the principal employer's responsibility for accidents to such accidents as occurred within a definite, specified area." Id., 199. The court noted that "[t]he emphasis is upon limitation of the area within which the accident must happen rather than upon actual control of the implements which caused the accident." (Citation omitted; internal quotation marks omitted.) Id. The court concluded that under some circumstances, "portions of a public highway in which work is being performed maybe a `premises'" for purposes of the statute. Id.
In Mancini, the plaintiffs sought to recover from the defendant, the Bureau of Public Works, for injuries incurred when a dynamite afterblast occurred in their work area. Id., 191. The defendant had hired a construction company to install sewer lines, which required blasting. Id., 191-92. Dynamite had been exploded under the direction of an employee of the construction company; however some of the blasting material remained unexploded. The plaintiffs were later injured when one of them hit a blasting cap with his jackhammer, thereby causing an explosion. Id., 192. The defendant had asserted the principal employer defense, and the trial court instructed the jury that if it found that the construction company was in control of the premises, then the defense "`would be of no avail on the part of the defendant. If you find that the defendant has proven it was in control of the premises, this would defeat the plaintiffs on all counts.'" Id., 195. The plaintiffs argued that the trial court had erred in submitting the question of "control of the premises" to the jury. Id., 197. The plaintiffs' claims of proof disclosed, in part, that "[t]he defendant was not only interested in laying the pipe, but also in the general safety of the area and in the correct performance of the work." Id., 200. The defendant's claims of proof revealed that the defendant's inspector did not control the work in any way, although he was in CT Page 8793 charge of the work results, and that the construction company had a "workmen's right-of-way" to put its equipment around or near the area in question, which had been contractually granted by the defendant. Id., 201. Based upon the parties' respective claims of proof, the court concluded that the trial court did not err in submitting the factual question of whether the defendant was in control of the premises to the jury. Id., 201.
In support of its motion, Whiting-Turner has attached a copy of a contract entered into between IBM, as owner, and Whiting-Turner, as contractor, which provides that the contractor was obligated to provide everything necessary for the construction and completion of an office complex "located on land owned by the Owner abutting Kettletown Road and Interstate Route 84 in Southbury, CT. . . ." (Exhibit A, Article 1, ¶ 1.1). The contract authorized Whiting-Turner to obtain bids from subcontractors; (Exhibit A, Article 2, ¶ 2.3); and, following IBM's approval of a bid, Whiting-Turner was authorized to enter into a subcontract, under its own name, with the selected subcontractor. (Exhibit A, Article 2, ¶ 2.3) Whiting-Turner has also attached a copy of the subcontract, entitled "SUBCONTRACT FOR Offsite Roadway Improvements," which was signed by Whiting-Turner, as contractor, and OG, as subcontractor. (Exhibit B). The subcontract sets forth the general and specific scope of the work to be performed by OG, which included "all roadway improvement work as detailed in the contract documents . . . ." (Exhibit B, Article 2, § B).
In the present case, the contract between IBM and Whiting-Turner provides that Whiting-Turner is to provide a project manager, a general superintendent at the job site, and "additional supervisory personnel" as required. (Exhibit A, Article 6, ¶ 6.1). The subcontract, entered into between Whiting-Turner and OG, however, provides that the scope of work to be performed by OG includes providing "full-time supervision on site." (Exhibit B, Article 2 § A(8)). In light of these provisions in the contracts, the court finds that there is a material question of fact with respect to whether Whiting-Turner had control and supervision over the daily work activities at the Kettletown Road jobsite, the location of the decedent's injuries. Because the court finds that a material issue of fact remains as to control of the premises, the court need not and does not determine whether questions of fact remain as to the other two conditions that must be met for Whiting-Turner to defeat Valerio's action against it based upon the principal employer CT Page 8794 defense. Accordingly, Whiting-Turner's motion for summary judgment as to count two of Valerio's second revised complaint is denied.
Mary R. Hennessey, Judge