******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CHRISTOPHER BARKER *v.* ALL ROOFS BY DOMINIC
ET AL.
(AC 40535)

Sheldon, Bright and Harper, Js.

*Syllabus*

The defendant city of Bridgeport appealed to this court from the decision of
the Compensation Review Board affirming the decision of the Workers'
Compensation Commissioner determining that the city was the principal
employer of the plaintiff when he suffered a compensable injury while
working for an uninsured subcontractor of the city on city property.
The plaintiff was repairing the roof of the city's transfer facility when
he suffered his compensable injury. After a formal hearing, the commis-
sioner found that the plaintiff was an employee of the uninsured subcon-
tractor, which, pursuant to statute (§ 31-255), required the Second Injury
Fund to pay the plaintiff's workers' compensation benefits in lieu of his
uninsured employer. Subsequently, the Second Injury Fund filed a
motion for an order declaring that at the time the plaintiff suffered his
injury, the city was his principal employer pursuant to statute (§ 31-
291) and, thus, that the city was liable to pay all compensation benefits
due to him. After the commissioner found, inter alia, that the city was
the plaintiff's employer, the city appealed to the board, which affirmed
the commissioner's decision. On the city's appeal to this court, *held*:

1. The city could not prevail on its claim that § 31-291 was not intended to
apply to governmental entities because such entities are not engaged in
any trade or business, as required under § 31-291 for principal employer
liability to attach: in *Massolini* v. *Driscoll* (114 Conn. 546), our Supreme
Court construed that statutory language and determined that a munici-
pality can be held liable as a principal employer of an uninsured subcon-
tractor's employee, the board applied that precedent and determined
that building maintenance is an essential obligation of the city and, thus,
part of the business of the city, and although the city claimed that
*Massolini* was incorrectly decided in that it defined business in an
overly broad manner, this court was bound by that precedent and could
not alter or reinterpret that decision, especially given that the language
of § 31-291 has not changed since *Massolini* was decided; moreover,
the city's claim that the legislature abrogated the rule of *Massolini* by
establishing the Second Injury Fund was unavailing, as the statute that
created the Second Injury Fund contained no language that referred to
or purported to modify § 31-291, the plaintiff's purported interpretation
of the Second Injury Fund statute would effect a repeal by implication,
which was not supported by our case law, and our Supreme Court has
cited *Massolini* in the years since the Second Injury Fund was created
as the legal basis for holding governmental entities liable as principal
employers under § 31-291.

2. The city could not prevail on its claim that even if § 31-291 can be applied
to governmental entities, the board committed error in affirming the
commissioner's finding that the city was the plaintiff's principal
employer because the roofing work the plaintiff performed for the city
was not a part or process in the city's trade or business; the commissioner
having properly concluded that the city has a responsibility to manage,
maintain, repair and control its property, including its garbage and refuse
disposal facilities, and, therefore, that the work of repairing the roof of
a city owned building was a part or process in the trade or business of
the city, the board properly affirmed the commissioner's finding that
the city was the principal employer of the plaintiff.

Argued April 11—officially released July 24, 2018

*Procedural History*

Appeal from the decision of the Workers' Compensa-
tion Commissioner for the Third District determining
that the defendant city of Bridgeport was the principal

employer of the plaintiff, brought to the Compensation Review Board, which affirmed the commissioner's decision, and the defendant city of Bridgeport et al. appealed to this court. *Affirmed.*

*Joseph J. Passaretti, Jr.*, for the appellants (defendant city of Bridgeport et al.).

*Joy L. Avallone*, assistant attorney general, for the appellee (defendant Second Injury Fund).

*Opinion*

SHELDON, J. The defendant, the city of Bridgeport (city),[1] appeals from the decision of the Compensation Review Board (board) affirming the finding and order of the Workers' Compensation Commissioner for the Third District (commissioner) holding that the city was the principal employer of the plaintiff Christopher Barker when he suffered a compensable injury while working for an uninsured subcontractor of the city on city property, and thus that the city was liable, pursuant to General Statutes § 31-291,[2] for all workers' compensation benefits[3] due to him in connection with that injury. The city claims that the board erred in affirming the decision of the commissioner that the city was liable to the plaintiff as his principal employer because (1) § 31-291 does not apply to governmental entities and (2) even if § 31-291, in theory, can apply to a municipality, it does not impose principal employer liability on the city in this case because one fact essential to establishing such liability—that the work being performed by the plaintiff when he was injured was a part or process of the city's trade or business—has not been satisfied.[4] We affirm the decision of the board.

The record reveals the following facts and procedural history. In March, 2000, the city contracted with All Roofs by Dominic (All Roofs) to repair the roof of the city's transfer facility. All Roofs then subcontracted the repair work to Howard Adams d/b/a Howie's Roofing (Howie's Roofing), who in turn hired the plaintiff to perform per diem work on the project. On June 29, 2000, the plaintiff was injured when he fell from the roof of the transfer facility while performing such per diem work.

Following his injury, the plaintiff filed claims for workers' compensation benefits against Howie's Roofing, All Roofs and the city. Neither All Roofs nor Howie's Roofing carried a valid workers' compensation insurance policy. After a formal hearing, Commissioner George A. Waldron determined, on January 5, 2005, that when the plaintiff suffered his work related injury, he was an employee of Howie's Roofing, and thus that the commission had jurisdiction over his claim. Under General Statutes § 31-255, this finding required the Second Injury Fund to pay workers' compensation benefits to the plaintiff in lieu of his uninsured employer.

In 2014, the Second Injury Fund filed a motion for an order declaring that, at the time the plaintiff suffered his injury, the city was his principal employer within the meaning of § 31-291, and thus that the city was liable to pay all compensation benefits due to him in connection with that injury. Under § 31-291, "[w]hen any principal employer procures any work to be done wholly or in part for him by a contractor, or through him by a subcontractor, and the work so procured to

be done is a part or process in the trade or business of such principal employer, and is performed in, on or about premises under his control, such principal employer shall be liable to pay all compensation under this chapter to the same extent as if the work were done without the intervention of such contractor or subcontractor.''

Commissioner Jack R. Goldberg conducted a formal hearing on the Second Injury Fund's motion on November 19, 2015, and February 23, 2016. At the hearing, the city conceded that it had hired All Roofs to perform roofing work at its transfer facility and that the plaintiff's injury took place on municipal property, which was under the city's control. The city denied, however, that it was liable to pay the plaintiff's workers' compensation benefits as his principal employer because the roofing work the plaintiff was performing when he was injured was not a part or process of the city's trade or business. The commissioner later summarized the evidence on which the city based its denial of principal employer liability as follows: ''John Cottell, the city's Deputy Director of Public Works, testified at the formal hearing that the city did not retain an employee on staff to repair roofs because the need was not extensive enough to hire an employee. In addition, the city's collective bargaining agreement barred other employees from doing work outside their assigned trades. Cottell said it was the responsibility of his department to maintain city owned buildings. To accomplish that, the city would issue a work order to a contractor it had placed on the 'on-call list' and retain him as an outside contractor to do small projects such as the one the [plaintiff] had been working on. Cottell testified he was uncertain whether a sole proprietor such as All Roofs . . . needed to provide proof of workers' compensation insurance before working on a city owned building. He testified that the city . . . was not in the roofing business in 2000.''

By finding and order dated June 16, 2016, the commissioner concluded that at the time of the plaintiff's injury, the city was his principal employer pursuant to § 31-291, and thus that it was required to pay all benefits to which he was entitled under the Workers' Compensation Act. In reaching this conclusion, the commissioner found that pursuant to *Massolini* v. *Driscoll*, 114 Conn. 546, 159 A. 480 (1932), a municipality can be held liable as a principal employer of an uninsured contractor's or subcontractor's injured employee; that pursuant to *Pacileo* v. *Morganti, Inc.*, 10 Conn. App. 261, 522 A.2d 841 (1987), it is not necessary for an employer to have employees who perform the particular functions that the injured worker was performing when he was injured in order to be held liable as his principal employer; that pursuant to General Statutes § 7-148, the city has a responsibility to manage, maintain, repair and control its property, including its garbage and refuse facilities;

and that, although the city had no roofers on its staff, the work of repairing roofs on city owned buildings was a part or process of the trade or business of the city. The city thereafter appealed to the board, claiming: first, that municipalities, as public or governmental entities, are not, by definition, engaged in any "trade or business," and thus they cannot be held liable as principal employers under § 31-291; second, that it is now the statutory responsibility of the Second Injury Fund, rather than of municipalities, to pay workers' compensation benefits to injured employees of their contractors and subcontractors that do not carry workers' compensation insurance; and third, that, even if the city could be found to have engaged in a "trade or business," it was not engaged in the trade or business of roofing when the plaintiff suffered his injury, and thus it cannot be held liable, under § 31-291, as the plaintiff's principal employer, to pay him worker's compensation benefits. The board rejected each of these claims.

Before us on appeal, the city presents an amalgam of its above described arguments as a single claim of error: that the board erred in affirming the commissioner's finding that the city was the plaintiff's principal employer pursuant to § 31-291. In its brief, the city first suggests, as it argued before the board, that the principal employer statute never was intended to apply to public or governmental entities. Then it briefly reiterates its second claim raised before the board, that the creation of the Second Injury Fund abrogated prior case law from our Supreme Court, which held that § 31-291 can apply to municipalities. Third and finally, it makes its principal claim that it was not the plaintiff's principal employer because roofing was not a part or process in its trade or business when the plaintiff suffered his injury. We will address all of the city's claims, however incompletely they were briefed before us, because the Second Injury Fund has responded fully to each of them.

"As a threshold matter, we set forth the standard of review applicable to workers' compensation appeals. The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and [the] board." (Internal quotation marks omitted.) *Marandino* v. *Prometheus Pharmacy*, 294 Conn. 564, 572, 986 A.2d 1023 (2010).

I

The city first suggests, as it argued before the board, that § 31-291 was never intended to apply to governmental entities such as municipalities. Alternatively, it

argues that even if § 31-291 at one time applied to municipalities, it ceased to do so with the creation of the Second Injury Fund, which has become responsible for paying workers' compensation benefits for all employees of uninsured employers like Howie's Roofing and All Roofs.

Under § 31-291, principal employer liability attaches "[w]hen any principal employer procures any work to be done wholly or in part for him by a contractor, or through him by a subcontractor, and the work so procured to be done is a part or process in the trade or business of such principal employer, and is performed in, on or about premises under his control . . . ." Section 31-291 involves three main elements: "(1) the relation of the principal employer and contractor must exist in work wholly or in part for the former; (2) the work must be on or about premises controlled by the principal employer; [and] (3) *the work must be a part or process in the trade or business of the principal employer*." (Emphasis added; internal quotation marks omitted.) *Gigliotti* v. *United Illuminating Co.*, 151 Conn. 114, 118, 193 A.2d 718 (1963).

A

The city first suggests that § 31-291 was not intended to apply to governmental entities because such entities are not engaged in any trade or business. The statutory language that the city asks us to interpret, however, was authoritatively construed by our Supreme Court in *Massolini*. There, in an opinion by which we are bound, the court expressly discussed as follows the statutory definitions of trade and business. "The language of the statute is disjunctive—'trade or business.' Both terms are, therefore, to be given their natural meaning, and are not used synonymously. 'Trade' commonly connotes the buying, selling or exchanging of commodities. 'Business,' however, is a much broader term. . . . When applied to a public corporation, the term signifies the conduct of the usual affairs of the corporation, and such as commonly engage the attention of its officers." (Citations omitted.) *Massolini* v. *Driscoll*, supra, 114 Conn. 552. The court in *Massolini* concluded that a valid claim for compensation had been established against the city of Hartford because the plaintiff's decedent had been injured "while engaged in doing an act incidental to and in furtherance of the operations involved in the business of the city . . . ." Id., 553.

In rejecting the city's claim, the board correctly noted that *Massolini* "clearly stands for the proposition that a municipality *can* be a principal employer and it is indistinguishable from the present case on both the facts and on the law." (Emphasis in original.) Applying the rule of *Massolini*, the board determined that building maintenance is an essential obligation of the city, because "maintaining a public works department and addressing refuse collection are among the usual activi-

ties of municipal government . . . [and] maintaining its buildings and facilities in good repair are among those operations which enter directly into the successful performance of municipal government."

In seeking to persuade us not to follow *Massolini*, the city suggests that *Massolini* was decided incorrectly because the definition of "business" it used was unduly broad and at variance with the commonly understood meaning of that term. That argument, of course, must be rejected because our task as an intermediate appellate court is to enforce the decisions of our Supreme Court, not to alter them by reinterpretation. Because the language of § 31-291 has not changed since *Massolini* was decided, and our Supreme Court has never offered its own reinterpretation of such language, we must conclude that its meaning remains unchanged to this date, and thus that municipalities can be held to be liable as principal employers under the statute.

### B

As a fallback position, the city argues, as it claimed before the board, that the legislature abrogated the rule of *Massolini* by establishing the Second Injury Fund, the purpose of which assertedly is to ensure that all injured workers whose employers do not carry workers' compensation insurance, nonetheless, are paid all workers' compensation benefits to which they are entitled for their work related injuries through the Second Injury Fund.[5] There are two important reasons why this argument must be rejected as well. First, there is nothing in the statute creating the Second Injury Fund that even refers to, much less purports to modify, the principal employer statute. Any such construction of the Second Injury Fund statute would therefore effect a repeal by implication, which is strongly disfavored. See *Powers* v. *Ulichny*, 185 Conn. 145, 153, 440 A.2d 885 (1981).

The second reason for negating the city's argument that the rule of *Massolini* was abrogated by the state statute creating the Second Injury Fund is, as the board itself determined, our Supreme Court has cited *Massolini* in the years since the Second Injury Fund was created as the legal basis for holding governmental entities liable as principal employers under § 31-291. See *Mancini* v. *Bureau of Public Works*, 167 Conn. 189, 355 A.2d 32 (1974) (finding defendant, public entity, to be principal employer). Accordingly, we are persuaded that municipalities like the city still may be held liable as principal employers when the injured employees of their uninsured contractors or subcontractors qualify for such benefits under § 31-291.

### II

The city finally claims that, even if § 31-291 can be applied to governmental entities, the board committed error in affirming the commissioner's finding that the

city was the plaintiff's principal employer in this case because the roofing work he was performing for the city was not a part or process in the city's trade or business. The commissioner's conclusions on that issue, however, "must stand unless they could not reasonably or logically be reached on the subordinate facts." (Internal quotation marks omitted.) *Samaoya* v. *Gallagher*, 102 Conn. App. 670, 675, 926 A.2d 1052 (2007).

"Generally . . . whether the work in which the [worker] is engaged is a part or process in the trade or business of the principal employer is a question of degree and fact." (Internal quotation marks omitted.) *Mancini* v. *Bureau of Public Works*, supra, 167 Conn. 195. "[T]he words process in the trade or business . . . [include] all those operations which entered directly into the successful performance of the commercial function of the principal employer. . . . The issue also has been framed in terms of whether the defendant's employees ordinarily or appropriately would perform the work in question . . . *although this test is not necessarily conclusive.*" (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 196. "[I]t is clear that the part or process element is intended to include all of those tasks which are required to carry on the principal employer's business." *Alpha Crane Service, Inc.* v. *Capitol Crane Co.*, 6 Conn. App. 60, 76, 504 A.2d 1376, cert. denied, 199 Conn. 808, 508 A.2d 769 (1986); see also *Mancini* v. *Bureau of Public Works*, supra, 195–96 (narrow construction of whether work to be done is part of trade or business "would contravene the frequent support given to a broad interpretation of the act").

In the present case, the commissioner's conclusion that, pursuant to § 7-148, the city has a responsibility to manage, maintain, repair and control its property, including its garbage and refuse disposal facilities, and therefore that the work of repairing the roof of a city owned building is a part or process in the trade or business of the city, must stand. Accordingly, we conclude that the board properly affirmed the commissioner's finding that the city was the principal employer of the plaintiff.

The decision of the Compensation Review Board is affirmed.

In this opinion the other judges concurred.

[1] The defendants in the matter before the commissioner were All Roofs by Dominic, Howard Adams d/b/a Howie's Roofing, the city of Bridgeport, and its insurer, PMA Insurance Company. This appeal is brought by the city and its insurance company.

[2] General Statutes § 31-291 provides in relevant part that "[w]hen any principal employer procures any work to be done wholly or in part for him by a contractor, or through him by a subcontractor, and the work so procured to be done is a part or process in the trade or business of such principal employer, and is performed in, on or about premises under his control, such principal employer shall be liable to pay all compensation under this chapter to the same extent as if the work were done without the intervention of

such contractor or subcontractor. . . .”

[3] The defendant Second Injury Fund is the appellee in this appeal. The plaintiff's direct employer did not have workers’ compensation insurance. Under General Statutes § 31-355 (h), “[w]hen a finding and award of compensation has been made against an uninsured employer who fails to pay it, that compensation shall be paid from the Second Injury Fund . . . .” The plaintiff did not file briefs before the board or this court.

[4] We note that the language of § 31-291 refers to “a part or process *in* the trade or business of such principal employer . . . .” (Emphasis added.) Our Supreme Court, in decisions addressing § 31-291; see *Mancini* v. *Bureau of Public Works*, 167 Conn. 189, 194, 355 A.2d 32 (1974); *Massolini* v. *Driscoll*, 114 Conn. 546, 551, 159 A. 480 (1932); and the board in its decision interchangeably use the phrase “a part or process *of* the trade or business . . . .” We therefore do the same.

[5] The city cites to General Statutes § 31-355, which provides in relevant part: “(a) The commissioner shall give notice to the Treasurer of all hearing of matters that may involve payment from the Second Injury Fund, and may make an award directing the Treasurer to make payment from the fund.

“(b) When an award of compensation has been made under the provisions of this chapter against an employer who failed, neglected, refused or is unable to pay any type of benefit coming due as a consequence of such award or any adjustment in compensation required by this chapter . . . such compensation shall be paid by the Second Injury Fund. . . .

“(c) The employer and the insurer, if any, shall be liable to the state for any payments made out of the fund in accordance with this section or which the Treasurer has become obligated to make from the fund, together with the cost of attorney’s fees as fixed by the court. . . .

* * *

“(h) When a finding and award of compensation has been made against an uninsured employer who fails to pay it, that compensation shall be paid from the Second Injury Fund . . . .”

---